BERRY, (NEVETT v.)   See Case No. 10,135.

## Case No. 1,359.

**BERRY v. SMITH.**

[3 Wash. C. C. 60.] [1]

Circuit Court, D. Pennsylvania.   April Term, 1811.

WRITS — CONFLICTING EXECUTIONS — PRIORITY — INSTRUCTION NOT TO LEVY.

1. It is not upon the supposition of fraud, from the length of time to which indulgence has been

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

granted by the plaintiff, in an execution to the defendant, that a subsequent execution, levied, has been preferred to a prior execution; proceedings under which, have been suspended by such indulgence. The true reason for the preference given to the subsequent execution levied, is; the end of the execution is to obtain satisfaction of the debt, and when delivered to the officer, it is his duty to proceed immediately for the purpose of obtaining satisfaction. The delivery of the execution, changes the property, and vests it in the sheriff; and his possession is notice to all the world.

[Cited in Bayard v. Bayard, Case No. 1,129.]

2. If the plaintiff, in an execution, orders the sheriff not to levy, the purpose of the delivery of the execution is defeated, and no change of property takes place.

[Cited in Howes v. Cameron, 23 Fed. 326.]

3. It is not necessary that the officer remove the property, or that he sell it before a reasonable time; but, if by order of the plaintiff, the property is left with the defendant, the execution has no operation.

4. There is no difference between a suspension of an execution one day, or for one month or more; the order for any suspension, deprives the act of the officer of all its force, until countermanded; and a second execution, levied in the mean time, if pursued, will take preference of the first. Aliter, if the second execution issues after the continuance of the order to the officer not to proceed.

At law. Case agreed. Judgment was entered in favour of the plaintiff, in the supreme court of Pennsylvania; and a fieri facias issued on the 1st of January 1811, and was delivered to the sheriff on the same day about twelve o'clock, with direction not to levy it, till further instructions. On the same day, the plaintiff's counsel called at the house of the defendant, to inform him of the issuing of the execution, and to request his taking immediate measures to discharge it. The defendant was not at home. The next day, the plaintiff's counsel called again, between one and two, and found the defendant at dinner. He then called him to the door, and informed him of the issuing of the fieri facias, said there was no desire to break him up, or to distress, if it could be avoided, consistently with the plaintiff's safety—that the execution was delivered to the sheriff, which would secure the property, and that the defendant must immediately see the plaintiff's agent, Mr. N., and make some arrangement with him, to prevent further proceedings under the execution. On the 3d of January, as the plaintiff's counsel did not hear from the defendant, or Mr. N., he directed the sheriff to proceed to make his levy; and accordingly, the sheriff went to the house of the defendant with the execution, and levied the same, but did not then remove the goods, and left them with the defendant, according to the directions of the plaintiff, till further orders, endorsed on the writ. On the 4th of January 1811, two judgments were entered in the circuit court of the United States, at the suit of Harold and Prosser, against the defendant, and two fieri facias were issued to the marshal. About one o'clock, on the same

day, the marshal, by virtue of said executions, levied on, and seized the goods of the defendant, then being in his house; and no sheriff, or sheriff's officer being there, he removed the said goods without interruption or claims, (but that the defendant informed the marshal, when he was about levying the said fieri facias, that the sheriff had been there.) Neither the plaintiff, nor his counsel, nor agent, knew of the issuing of the said fieri facias, or of the levy or removal of the goods, by virtue of them, until after it was done. The above case was agreed, upon a rule to show cause why the plaintiff should not have his executions satisfied, out of the moneys paid into court by the marshal; and the question for the opinion of the court was, whether the plaintiff in the suit in the state court, or those in the circuit court of the United States, are entitled to a pre'e enc? of payment, out of the sales of the goods, so as aforesaid taken in execution.

Hopkinson, for plaintiff, cited [Levy v. Wallis,] 4 Dall. [4 U. S.] 167; [Water v. McClellan,] Id. 208; Id. 358, [U. S. v. Conyngham, Case No. 14,850;] Browne. (Pa.) Append. 26; [Hooton v. Will,] 1 Dall. [1 U. S.] 187, [450;] Cowp. 177; 3 Burrows, 962, 1243.

Hallowell, for Harold and Prosser, cited Barnes v. Billington, [Case No. 1,015,] in this court; Welch v. Murray, [4 Yeates, 197;] Hurst v. Hurst, [Case No. 6,931,] in this court; 7 Term R. 20; Skin. 257; 2 Vern. 218; 1 Sell. Pr. 526; 1 Term R. 729.

WASHINGTON, Circuit Justice, delivered the opinion of the court.

In most of the cases to be found in the books where the execution first delivered has been postponed, as against purchasers and posterior executions, in consequence of delay in the due execution of the writ, the time has been so long as to warrant a presumption of a design to protect the property; which, in contemplation of law, amounts to a fraud, however innocent and even praiseworthy, on the ground of benevolence, the motive might be which induced it. For this reason, therefore, we frequently meet with expressions, in the opinions delivered in those cases, which lead to the conclusion, that the mere circumstance of time furnishes the principle which is to determine the question of fraud. This is a case in which this supposed principle must be examined, and its soundness decided upon; for, the vigilance of the creditor under the second execution, has been so great, as to leave the first creditor only three days and a little more, for the exercise of his intended indulgence to the debtor.

In the cases reported in the books, the delay has varied from six days, to one and two years;—in this, it was shorter than the shortest of those periods, and if time be sufficient to govern the principle of decision, the court would look in vain to the light which these

cases have shed on the subject, to enable us to distinguish the substantial difference, between a delay of three, and a delay of six days; for, it must be remarked, that in the cases referred to, the delay was produced by the order or consent of the creditor; and in all of them the motive was honest, though the intended effect was protection to the property, for a longer or a shorter time. If the principle is to be collected from the mere circumstance of time, it is a phantom whose shape will vary according to the different visions of the judges who examine it, and in reality, will exist only to perplex, and to render the law uncertain. Rejecting, therefore, the expressions of judges, which, unless they are understood in reference to the cases before them, are loose, and altogether unsatisfactory; let us see what is the solid and material principle, which has governed their decisions. It seems to the court, to be this;—that the end and object of an execution is, to obtain satisfaction of the debt for which it issued, and being delivered to the proper officer, it gives to the creditor a priority; because, the law points out to that officer his duty, which is to execute it without delay. In doing this, the property of the debtor is changed, and vests in the officer, for all the purposes of that execution. The change of possession, gives notice to all the world, of the real situation of the debtor, in relation to the property so seized, and prevents them from being deceived by the appearance of wealth, to which the debtor has no just pretensions. If the execution is delivered to the officer, with orders not to levy it at all, or until further orders, the purpose of the delivery is not answered, and all the legal consequences of the measure, in respect to creditors and purchasers, who would otherwise have been affected by it, are defeated. If the officer is ordered to levy on, but to leave the property with the owner, until he shall be otherwise directed, the party undoes, by such an order, all that the officer does by the seizure;—it works no change of the property; —it is no levy in respect to third persons. It is not necessary that the officer should remove the property, or even sell it immediately, if this be done in a reasonable time. But, he has effected nothing, if, by the plaintiff's order, he leave the property with the debtor, to exercise every act of ownership over it, which he could have done before the seizure.

It will be perceived, that in laying down this principle, the court makes no distinction between a suspension for one day, or one or more months. The order of suspension deprives the act of the officer, in pursuance of it, of all its force and effect, until it is restored by a countermand; and if, in the mean time, a second execution is taken out and levied, the former must be postponed;—not so, if the second execution issues subsequent to such countermand; and upon this distinction, the decision of the case of Huber v.

Schnell, [1 Browne, 15,] in the common pleas of this state, seems to be entirely correct.

The court is, for these reasons, of opinion, that Harold and Prosser are entitled to a preference of payment out of the sales of the property taken in execution.