## Case No. 1,129.

### BAYARD v. BAYARD.

[3 Pa. Law J. 261; 5 Pa. Law J. 160.]

Circuit Court, E. D. Pennsylvania. Nov. 15, 1845.

COURTS — FEDERAL AND STATE JURISDICTION — PROPERTY IN HANDS OF MARSHALL — LEVY BY SHERIFF.

1. Where the proceeds of goods levied on by the marshall under process from the United States' courts exceeds the amount of the executions in his hands, although a sheriff under process from the state courts cannot take possession of the property in the hands of the marshall, yet the defendant's interest in the surplus becomes vested in the sheriff, on the delivery to him of the execution from the state courts; nor can this be defeated by any process subsequently issued out of the United States' courts.

[Cited in Re Johnston, Case No. 7,424.]

2. The proceeds will be treated as if but one jurisdiction existed, and moneys paid into court will be awarded to the party who could have recovered from the marshall, had the money remained in his hands.

[At law. Action by R. H. Bayard against Henry M. Bayard. Judgment was given for plaintiff.] Sur rule to show cause why R. H. Bayard should not take money out of court, [the surplus of proceeds of defendant's property after satisfying prior judgments. Rule discharged. Heard also on motion by the Bank of Middletown for the same purpose. Granted.]

William Rawle, for R. H. Bayard.

Benjamin Gerhard, for the Farmers' Bank of Delaware.

Benjamin H. Brewster, for the Bank of Middletown.

RANDALL, District Judge. On the 23d of August, 1845, several writs of fieri facias were issued out of this court at the suits of various plaintiffs, against Henry M. Bayard, and were on the same day delivered to the marshall, who by virtue thereof, levied upon and sold the personal property of the defendant, situate in Dauphin and Lancaster counties; the sale commencing in Dauphin on the 8th and ending in Lancaster county on the 11th of September; the sales in Dauphin county not being sufficient to satisfy the executions then in the hands of the marshall, but the aggregate amount of both sales, producing a surplus of about $1500 after satisfying all the executions then in his hands. This surplus having been demanded by several claimants, the marshall has paid the money into court, where the several parties have urged their respective claims to receive it. On the 28th of August, 1845, the Farmers' Bank of Delaware issued a fieri facias on a judgment obtained against the defendant in the court of common pleas of Dauphin county, which was delivered to the sheriff of that county on the same day. On the 9th of September, 1845, two writs of fieri facias were issued on judgments entered in the court of common pleas of Lancaster county in favour of the Bank of Middletown, against the defendant, and delivered to the sheriff of Lancaster county on the morning of that day. Verbal notice of these last mentioned writs was given to the marshall on the 10th of September, by the sheriff of Lancaster county, who made return as follows: "September 11th,.1845, levied on a quantity of ore on the bank of the canal. near Columbia, a quantity of tools, &c., at the ore bank, subject to the levy made by the United States' marshall." On the 11th of September, R. H. Bayard issued a fieri facias on a judgment obtained by him in this court, which was delivered to the marshall at 1 o'clock p. m. of that day. To this writ the marshall returned, that "Before this execution came to hand, I had levied on property of the defendant under prior executions, and sold the same from the 8th to the 11th of September."

The plaintiff in this judgment (R. H. Bayard), claims the money paid into court, and contends that the executions issued from the state courts could have no effect, inasmuch as the property sold was in the custody and possession of the marshall, by virtue of his prior levy when these executions issued, and therefore not liable to any process issued from the courts of the state; and the case of Hagan v. Lucas, 10 Pet. [35 U. S.] 400, is cited in support of this claim. In that case it is decided, that "property once levied on remains in the custody of law and is not liable to be taken by another execution in the hands of a different officer, and especially by an officer acting under a different jurisdiction." To this doctrine I most fully assent, and agree that "a most injurious conflict of jurisdiction would be likely often to arise between the federal and state courts, if the final process of the one could be levied on property which had been taken by the process of the other." The sheriff of Dauphin or of Lancaster county, could not therefore by virtue of the process placed in his

hands, take the property levied on out of the custody of the marshall. The executions in his hands, vested the property in him to the extent of the debt, interest and costs on those executions, but no more: if he levied on property of the defendant exceeding in value the amount of the executions in his hands, then for the excess he was a trespasser. Wats. Sher. 175. It is true, the law does not require a marshall or sheriff to determine exactly the value of the property levied on by him, and if his proceedings appear to have been bona fide, will not visit him with vindictive damages, if the goods levied on produce more than the amount of the execution; but the property in the excess remains in the defendant, who may execute an assignment or transfer of such property, and the assignee would have a right to receive it from the marshall in preference to any subsequent lien; or if no subsequent change of property takes place, the defendant would be entitled to receive any surplus remaining in the hands of the marshall after satisfying the executions. The defendant then retained an interest in the property subject to the levy by the marshall, and although the sheriff could not take possession of .the property levied on or remove it from the custody of the marshall, the delivery of the executions from the state courts to the sheriff, divested the interest of the defendant (whatever that may have been), and vested it in the sheriff for the use of the plaintiffs in the executions, as firmly as if he had executed a formal and voluntary assignment of such interest, —Act of 16th June, 1836, [P. L. 761,]—and this could not be defeated by any process subsequently issued by the courts of the United States,—Prince v. Bartlett, 8 Cranch, [12 U. S.] 431; Beaston v. Farmers' Bank of Delaware. 12 Pet. [37 U. S.] 136. The sheriff could maintain an action to recover the amount of that interest before the return day, although no levy had been made by him. 2 Serg. & R. 157; 1 Wash. C. C. 29, [Barnes v. Billington, Case No. 1,015;] 3 Wash. C. C. 60, [Berry v. Smith, Case No. 1,359;] 1 Baldw. 246, [Thompson v. Phillips, Case No. 13.974;] 1 Pa. Law J. 317, [Ex parte Dudley, Case No. 4,114.] In this view of the law there can be no conflict between the federal and state courts; each will proceed within the limits of its prescribed jurisdiction, and if from any cause, property or its proceeds which is legally subject to the jurisdiction of the one. should come under the equitable control of the other, it will be disposed of as though there had been but one jurisdiction. And in the distribution of moneys paid into court, the court will always award it to the party who would have a right to recover it from the marshall or sheriff, had it remained in his hands. In the present case, the amount of money in court, not being sufficient to satisfy either of the executions issued from the state courts, prior to the fieri facias of R. H. Bay-

ard, the rule to show cause why he should not take the money out of court, is discharged.

At a subsequent day, B. H. Brewster moved for leave for the Bank of Middletown to take the money out of court, the surplus having been raised by sales of the property in Lanacster county. This was opposed by Mr. Gerhard, who contended that the executions in Lancaster county had been prematurely issued. THE COURT said, if the executions were irregular, the court from whence they issued ought to have been moved to set them aside; they were not void, and the sheriff could have justified under them. [Blaine v. The Charles Carter,] 4 Cranch, [8 U. S.] 332. But time would be allowed to apply to the common pleas of Lancaster county; this was done, and that court refused to interfere, when Mr. Brewster's motion was granted and the money paid to the Bank of Middletown.