Tilghman C. J.
(after stating the principal facts) proceeded as follows:—
Thus it appears, that'the plaintiff had the first judgment and execution, but the, defendant the first sale and deed from the Sheriff ; and the question is, which has the preference. The plaintiff’s judgment in Northumberland county, was no lien on the land in question, which lies in Indiana county. But Kelly’s judgment being in the county where the land lies, was a lien from its-date. The defendants, therefore, will be entitled to hold it, unless the plaintiff obtained a lien by his execution, which continued to thé time of sale. . My opinion will be confined to the case before us, which is a testatum fieri facias, issued not from the Supreme Court, but a Court of Common Pleas. The power to issue writs of testatum execution from on.e county to another, was given to the Courts of Common Pleas by the Act'of the 22d of May, 1722 j but that Act says nothing on the subject of lien. The Act of the 21st of March, 1772, which gives a lien from the.time of the delivery of the execution to the Sheriff, is confined both by words and spirit to goods, because lands were always bound from the date of the judgment. There is no Act of Assembly which fixes the commencement, or duration of the lien, in case of a testatum execution - issued from a Court of Common Pleas.- We must, therefore, be governed by general principles. There can be no doubt but the lien commences at the time of the delivery of the writ to the Sheriff. To give it.commencement from the teste of the writ, would be unreasonable, because it issues from one *507 county, directed to the Sheriff of another, and becáuse the supposition that it issues at the time of the teste, is but a fiction, which must not be permitted to operate to the injury of persons unconnected with the suit. Assuming it then as a principle, that the lien commences at the time of the delivery of the writ to the Sheriff, how long shall it continue ? An execution levied on land, is very different from one levied on goods. For although the Legislature of Pennsylvania has always pursued the policy of making property of all kinds subject to the payment of debts, yet it has never been thought proper to expose real property to sale, without great caution. A fieri Jadas alone is authority for selling goods, without waiting for a venditioni exponas. And a sale of personal property is good, though the fieri fadas be not returned. But not so with land. An inquest must be held, to inquire whether, the rents and profits will be sufficient to satisfy the debt in seven years ; and if the jury find in the affirmative, the land cannot be sold. But if the jury condemn the land, the Sheriff must return his writ, together with the inquisition ; and thereupon a venditioni ex-ponas issues, without which he has no power to sell. During all these proceedings, the lien continues, and I see no reason why the plaintiff may not suspend the sale, and retain his lien, provided he continues his process in such a manner as to give public notice that he means to hold the land. This may be done by issuing writs of venditioni ex-ponas, from term to term, and delivering them to the Sheriff to whom they are directed. This is analogous to. the practice and principles of the law in other Cases, and will be attended with general convenience. For if the plaintiff should be compelled to proceed to a sale on the first venditioni ex-, ponas, at the peril of losing his lien, it would drive him, against his will, to the sacrifice of the defendant’s property, in many cases, where a little indulgence might render a sale unnecessary. This I should consider as a public evil, in which the country ought not to be involved without necessity. On the other hand, to say, that the bare delivery of the fieri fadas to the Sheriff, should create a lien for an indefinite length of time, would be going to the contrary: extreme, without any principle of law to support it. The testatum writ is returnable to the Court •whence it issued, so *508 that no vestige remains of - the lien, on the records of the county 'where the land lies; and purchaser would have to search for liens in every county of the State. From what I have said, it may be perceived what my opinion must be in the case before us. The plaintiff suffered seven years to elapse after the delivery of his fieri facias to the Sheriff of Indiana county, before he proceeded to a sale. But this was not all: there was one interval of four years, and another of upwards of two years, during which no process was issued ; so that the plaintiff, so far from following! up the execution, by continuing the process from term to term, has grossly neglected it. By conduct of this kind the world has been deceived,. Every one who heard of the levy and condemnation in 1809, had a right to conclude that the plaintiff had abandoned it. And there may be many who never heard any thing of it, as the record of the proceedings remained in the Court of Northumberland county. Considering, then, that there is no Act of Assembly, nor any principle of the common law, to support the plaintiff’s pretensions, I am of opinion that the lien created by the delivery^ of the execution to the Sheriff, was lost by the plaintiff’s negligence, and consequently the defendants, have good title.' This was the opinion of the Court of Common, Pleas, and their judgment should be affirmed.
Gibson J. —
As a lien of indefinite duration is supposed to have been created and established by the fourteenth section of the Act of 20th March, 1799, it is proper to inquire how the law stood before that Act was passed.
In Pennsylvania, lands, with certain modifications, are chattels for the payment of debts. This is repeated again and again in our books; insomuch, that it has become an axiom in our system, and one that has produced important alterations in the common law., Thus, lands are to be reached by an action; not against' the heir or devisee, but the personal representative; for although they do not pass, into'the hands of the executor as chattels do, they are liable to be seized, and sold on a judgment against him in the same way as if they did. Wilson v. Watson, 1 Peters’ Rep. 273. So, dower is barred byT a sale on a judgment-against the husband. Graaff v. Smithy 1 Dall. 481; and on the same principle, lands are *509 a fund for payment of debts, so far as to be sold by executors or administrators, on an order of the Orphans’ Court; in which case the purchaser will hold them discharged of the lien of former judgments. Moliere’s Lessee v. Noe, 4 Dall. 450. As to lien, there was this distinction: Lands within the county, are by the Stat. 13, E. I. c. 18, bound by the judgment, and, consequently, strictly as land-, but as all lands, whether within the county or not, were subject to sale on execution, the levy of a testatum fieri facias on land, was attended with all the common law incidents, as to lien, of a levy on goods. Now, by the common law, an execution had relation to the time when it was awarded ; and, therefore^ if the goods were purchased by a third person after the teste, although bona fide, and for a valuable consideration, they were nevertheless liable to be taken in the execution in the hands of. the purchaser. This had been so far altered, ih England, by the Statute of Frauds, and in Pennsylvania, by the Act of 1772, that chattels were bound only from the delivery of the writ to the Sheriff; but as the Act of 1772, in terms, embraced only goods, it was thought advisable (to quiet doubts I presume) to. put the lien of a testatum execution, in express terms, on the footing, as to lands, of the lien of a fieri facias within the proper county, as to chattels : and this produced the Act of 1799 ; by which it is declared, that “ every testatum execution shall be a lien upon lands and tenements, only from the time of the delivery thereof to the Sheriff.” So that the principal difference, in this respect, is, that the Sheriff does not, in the case of land, as he does in the case of chattels, take the thing levied out of the defendant’s possession; a circumstance of some importance in my view of the subject. From this, it is plain, there was no intention to create a lien ; but on the contrary to abridge one that existed before. Indeed it is evident from the language of the Legislature, they took for granted that there was a lien as the law then stood, which bound the land from the teste. The Act of 1799, therefore, barely recognises the existence of a lien ; but it is the lien of the common law, and one that is recognised only to be abridged : so that the case is no stronger than if the Act had never been passed. But whether it were created by the Act or not; the result is the same ; for the provisions of this particular Act, as to land, is sub- *510 . stantially the same of those of the Act of 1772, as to goods; and it will appear that the lien of an execution levied on goods, may be lost.by the slightest negligence in pursuing it. Neither was it the intention that the lien should, after it attached, be of indefinite duration, It would be an odd construction that should impute to the Legislature a design to give an effect to án execution which they refuse to tolerate with respect to a judgment. It would be a strange inconsistency in them to say, the direct lien of a judgment which is matter . of record in the county where the lands .lie, shall be of no avail after five years, unless the plaintiff gives additional notice within that time, byre-asserting his claim before the Court; and yet that an execution which is a mere accessory or consequence of a judgment, shall indirectly produce an indefinite lien, which is conceded to be secret in its nature, and not to be discovered except by an examination of the execution docket of every county in the State. The object of the Act of.,1799, therefore was to put the lien of a levy of land, exactly on the footing of a levy of goods. Now, why áre goods seized in execution, bound by the writ ? Simply because they are in the custody of the law, and a lien is absolutely necessary to render the process effectual; and that the plaintiff has it, is the consequence, not the object of the execution. The object is satisfaction' of the debt, not security Tor it; and the lien will therefore not hold longer than is sufficient by a diligent pursuit of the remedy to obtain that satisfaction. The law will not endure the levying of an execution on goods, only as a security. Bradley v. Wyndham, 1 Wils. 44. Smallcomb v. Buckingham, 1 Salk. 320. S. C. 1 Lord Raym. 251. By the common law of England, alevy is held to be fraudulent, where .the goods are left in the hands of the defendant; and notwithstanding some decisions of this Court to the contrary, the only exception to this, as the law is understood in this State, is confined to household furniture. But-even there, the plaintiff must use reasonable diligence ; for a levy will not protect furniture which has been suffered to remain in the defendant’s possession several years, against a subsequent execution which has issued before the return of the first. Lewis v. Smith, 2 Serg. & Rawle, 142. In truth, where the levy has been suffered to remain an unreasonable time, it ought not to protect, whether the *511 execution were returned or not j and I apprehend the law will at no remote period be thus held, if happily it be not entirely brought back in this particular, to the rule of the English common law. Retention of possession ought to be considered a badge of fraud, as much in the case of a levy, as in that of a bill of sale. This exemption of household furniture from the strict rule of the common law, was origin nally an unfortunate one, as is shewn by every day’s expert-' ence of the collusion and fraud which it notoriously occasions. Heaven forbid that the mistaken principles of humanity on which it was founded, should éver' be carried further! But the return of a levy of household furniture in the county where the goods were, or rather ought to have been seized, is some, although imperfect notice, to third persons. In the case of a testatum execution, the return affords no notice at all; for it would be unreasonable to require a purchaser to search every Prothonotary’s office in the State, and without doing so, he could never be secure. The latter, therefore, is stronger than the case of a levy within the county. The question then is, whether the exception to the rule which requires the plaintiff to proceed' to the collection of his debt in the way best adapted to prevent fraud and surprise on third persons, heretofore confined to household furniture, shall be extended to lands, and the plaintiff be permitted, by means of a levy, to create a secret lien of indefinite duration : or whether the lien shall be held to endure no longer than may be necessary to enable him to obtain the legitimate fruit of his judgment, by a sale ? By the levy, the plaintiff acquired an inchoate interest in the land, which might be abandoned like any other interest which requires subsequent acts to perfect it; and as there was an interval of seven years, during which nothing was done, and nothing appears to account for the delay, it seems to me there was such laches on his part as should postpone him.
On what foundation does the notion of the lien, being interminable, rest ? Not on decision; for, after diligent search, I have been unable to find even a note of a Nisi Prius case in support of it, except the unreported case of Green v. Allen, Whart. Dig. 209, in the Circuit Court of the United States for the District of Pennsylvania ; which, although we greatly respect every opinion of the learned Judge by whom it was *512 decided, is not an authority binding on this Court: Not on positive enactment j for the 24th section of the Act of 1722, which gives the testatum execution, is silent as to its having this effect; and I think 1 have shewn that it cannot be rested on the. Act of 1799. The whole scope of mur policy is adverse to secret or stale liens ; and both the Courts and the Legislature have endeavoured, as far as it was practicable, to make every thing that can affect the title to land, matter of record. The contrary has been permitted only where it has been exacted by absolute necessity. The lien of a judgment is limited to five years; liens on houses for materials used in their construction, to two ; and the debts of deceased persons, to seven ; unless certain specified acts be respectively done tó give publicity to the claim ; and this Court has refused an equitable lien for the purchase money of land, where the title has been conveyed. The lien of a testatum execution to the extent contended for, would be more mischievous than any of these, as it might assail the fair purchaser on all sides, and from the remotest quarters of the State, without a possibility of guarding against it.
By the Act of 1799, which first recognised the lien, the Sheriff was directed to file a copy of the execution, and his endorsement of the time of its having come to his hands, in the office of the Clerk of the Circuit Court for the county in which the lands should lie. Since that Court was abolished? it is" conceded on, all hands, there is no particular office or place.to which a purchaser can look for information. It is impossible therefore that the lien can prove otherwise than mischievous in practice. Why then should we sanction an indefinite continuance of it, for the first time, now? For it is clear, that except by the Circuit Court of the United States, in Green v. Aden, (which has not been reported, and which consequently has led to no practical results) it has not been sanctioned by any Court hitherto. In opposition to the conclusion to bé drawn, as well from the intrinsic unfairness of the thing, as by analogy from the rule which governs in the case of a levy of goods, and from the acts of the Courts and of the Legislature, I can discover nothing like a reason for it; at least nothing but a notion or indistinct feeling of the profession, arising probably from a hasty view of the Act of 1799, that the law was perhaps so j but no counsel, whatever *513 might be his opinion of the ihatter as a subject of speculation, would have advised a client to acquiesce in it without a contest. No inconvenience therefore would be experienced in exploding the doctrine now; at least none that would be comparable to the inconvenience of its operation prospectively.
I am for affirming the judgment, not merely because the case is one of very gross laches. The title of the purchaser, ought not to depend on the degree of negligence on the part of the judgment creditor j naf can it. The Act of 1799 either establishes an indefinite lien, or it does not. If it does, we cannot restrain it; and if it does not, I know not on what ground it can be held to endure longer than is absolutely necessary to obtain satisfaction. If the judgment creditor can indulge hrs debtor without prejudice to third persons, let him do so: if he cannot, every feeling of justice points to the conclusion, that the indulgence should be at his own risk. Of all the parties, the bona jide purchaser has the most meritorious claim to protection ; and the law is severe enough in all conscience, when it cuts him out by sustaining the lien during the process of raising the debt by a sale, even where the creditor has used all possible diligence. Why should the law be adapted exclusively to' the convenience of the debtor ? It is not a principle in morals, nor ought it to be in jurisprudence, that he should be compelled to pay only when it is convenient. It is more just that a risk of loss from pressing a sale at an unpropitious times should be borne by him who is a defaulter, than that a loss from indulging him, should be borne by a third person, who is in no default at all. Undoubtedly there are seasons, when to require judgment creditors to pursue for immediate satisfaction, would occasion much individual distress $ but the cases in which the security arises from the levy of a testatum execution on land, form but an inconsiderable part of the mass which occasions the pressure; and where the land is bound by the judgment, indulgence may be safely allowed. And beside, it is, to say the least, doubtful, whether in a vast majority of such cases,.the condition of the debtor is not so desperate as to end in absolute insolvency and a sacrifice of property, after all that can be done for him by legislative' interference or otherwise. So that, in such seasons, i® *514 would, on the whole, perhaps be best to let the law take its course. But putting the equity of the purchaser' out of view, and granting, for the sake of the argument, that some degree of inconvenience would arise from exacting the utmost degree of diligence; would there not, on the other hand, be greater inconvenience in permitting what may be thought a reasonable degree of indulgence ? There can be no rule to ascertain what is reasonable in the particular case, and the whole matter would have to be left to the uncertain determination of a jury: or if the question should.be taken to be matter of law, it would have to be decided on the particular circumstances of each case, without reference to any rule; and thus the certainty and security of titles would be impaired. I do not say, the creditor should be bound, by forcing a sale, to lose any part of his debt, if a reasonable extension of the time would produce a better price; but I am of opinion- that the mere renewal of the execution from term to term, without an effort on his part to effect a sale for a reasonable price, would be insufficient. He ought to shew himself to be in earnest,' by actually trying what the land will bring. This would shew reasonable diligence, and by affording additional notice, guard subsequent purchasers from the possibility of danger. . .
Duncan. J. —
Secret liens on land in a country where its transfer is so frequent, have been considered as most pernicious. Hence it is, that the Legislature have, in most cases, provided for their publicity by some memorial or register in the county, where the lands lie. Conveyances, mortgages, judgments, can, with little difficulty and expense, by application to the public offices-, be discovered. But if a testatum execution levied on land, be a continuing incumbrance, there would be a departure from the wise.provisions of the law; for no human prudencé or circumspection could protect a purchaser, unless he had search made in the fifty-two counties of the State. This would be such a difficulty as would extinguish all credit, and put an end to buying and selling ; for the trouble and expense of these searches, and the delay, would appal any prudent man. The Legislature have made many wise provisions on this head. The lien of a dormant judgment ceases at the end'of five years; *515 no judgment is a lien, except in the county where it is rendered ; they have lately restrained the time for recording mortgages. It is therefore inconsistent with the whole scope of our law and public policy, that a testatum execution from the Courts of Common Pleas, should retain an interminable lien. The Act of 1772, giving the testatum execution, is si- ■ lent as to lien. With respect to judgments in. the Supreme and Circuit Courts, the Legislature have, in express terms, given to testatum executions issuing from these Courts a lien; but have cautiously provided for notice. The fourteenth section of that Act provides, that no judgment rendered either in the Supreme Court or any -of the Circuit Courts, shall be a lien on real' estate, except in the county where the land lies; and every testatum execution shall be a lien on lands and tenements from the time of the' delivery thereof to the Sheriff, who is directed -to endorse the precise time of receiving the same, and forthwith to certify a transcript thereof, together,with the day and time of each testatum execution coming to his hands, in and to the office of the Clerk of the Circuit Court of the county where the lands and tenements lie, unless the same lands be in the county of Philadelphia, in which case such transcript shall be rendered to the Prothonotary of the Supreme Court; and also to make-return of the” said writ and endorsement to the office of the Court from whence the writ issues.
From the silence of the Act of 1722 as to lien, from the provision of the Act of 1779, giving the lien to a testatum issuing from the Supreme or Circuit Court, and regulating the notice, it is fairly to be concluded, that a testatum execution levied on lands, issuing from the Courts of Common Pleas, does not constitute a continuing lien. But it is quite different .from a levy ,on personal property. It is the duty of the Sheriff to remove the goods. He is the only person who can sell them after the expiration of his office; on his death, his executors or administrators may. Not so as to lands. The Sheriff cannot disturb the defendant in the execution, in his possession. Only the Sheriff in office can sell on a venditioni exponas. The defendant cannot be dispossessed by ejectment, or in the summary manner provided by the Act of the 6th of April, 1802, until after a deed duly acknowledged in open Court by the Sheriff. The Sheriff becomes *516 the owner of the goods, from the time of the levy. He may support an action of replevin or trover for then!. He may sell on the fieri facias. But it is not so on a levy of lands. What then is the effect of a levy of lands, on a testatum ex» ecution ? A right attached in the plaintiff to proceed to recover his debt. But if after the levy made, he suspend his proceedings, remain dormant, without any renewal'of his writs or keeping his levy alive, a subsequent judgment, mortgage, or conveyance, will prevail against him. It is not required, that he shall sell on the first venditioni exponas. This might be. harsh .and ruinous to the defendant, and the lands, though worth more, might not' be sold to the amount of his.debt, and thus the plaintiff be injured. He therefore may postpone a sale, and preserve his priority by a series of executions issuing every term and delivered to the Sheriff. This cannot be by entering continuances, but by the actual issuing of the writ and delivering it to the Sheriff., In this case, the delay has been most extraordinary: The testatum fieri facias, Cowden v. Brady, to Indiana county, issued to August, 1809, — land levied on and condemned, — venditioni exponas to November, 1809, — unsold. Haye v. Brady, judgment in March, 1811, revived by scire facias, and judgment to September, 1812, — and successive executions regularly issuing, — and on a second plur.ies fieri facias to September, 1813, this land was levied on and condemned, — and on venditioni exponas to March, 1814, was sold to James M. Kelly. Deed acknowledged on the 16th of June, 1814. Co-wden's execution remained dormant from 1809 to 1813 and from 1813 to 1816 again sleeps, and more than two years after the sale to Kelly on Haye's execution, it is sold to the plaintiff. I am therefore of opinion, with,the Court of Common Pleas, that the sale to Kelly was a good and valid one, and cannot fee overreached by the subsequent sale to Cowden. '
Judgment affirmed.