# THE SUPREME COURT

OF

## PENNSYLVANIA.

———◆———

EASTERN DISTRICT, DECEMBER TERM, 1830.

———◆———

[PHILADELPHIA, JANUARY 10*th*, 1831.]

## ⸨ VITRY for the Use of Vitry *against* DAUCI.

The issuing and return of a *scire facias* under the Act of 4th April, 1798, does not continue the lien of a judgment beyond the period of five years limited by the Act.

The plaintiff must use reasonable diligence in prosecuting the *sci. fa.* to judgment, by which the lien of the original judgment is continued for another period of five years.

But if an appearance and plea should be entered to the *sci. fa.*, it *seems* the plaintiff would be entitled to a liberal share of indulgence, and perhaps the rule of *lis pendens* might be applied.

JUDGMENT was entered in this court of March Term, 1818, against the defendant, and on 2d November, 1820, a *scire facias post annum et diem* was issued upon it, which, on the 6th November, 1820, was returned " *made known.*" Nothing further was done until 1st January, 1827, when by order in writing of the plaintiff's attorney, judgment was entered for want of an appearance to the *scire facias*. A *fi. fa.* was issued to July Term, 1827, which was levied on real estate of the defendant. The property was condemned and sold for $5000, under a *vend. exponas*, returnable to December Term, 1827, to Anthony Vitry, to whose use the judgment had been marked.

The question was, whether the issuing of the *scire facias* and the proceedings under it, continued the lien of the judgment; which was disputed by creditors, claiming under mortgages executed in April and May, 1819.

*Keemle,* for the purchaser, observed, that the object of the Act of

VOL. III.       2

(Vitry for the use of Vitry *v.* Dauci.)

4th April, 1798, *Purd. Dig.* 420, (New Ed.) as declared in the preamble, was, to prevent the evil and inconvenience to purchasers of real estate, by suffering judgments to remain a lien for an indefinite length of time without process to continue or revive the same, the previous legislative provisions for that purpose having proved ineffectual. The indefinite continuance of the lien of judgments was the evil, and the remedy proposed, was process to continue or revive them. The act contemplates the same sort of process, namely, a *scire facias*, both for the continuance and the revival of a judgment. If, therefore, the kind of process indicated has been resorted to for either purpose, the case is within the statute. In the first section provision is made for judgments then in existence. The second section, which embraces this case, relates to judgments thereafter to be entered, and declares that they shall continue a lien no longer than five years, *unless* within that period a *sci. fa.* be sued out to revive the same. All that is necessary, therefore, in order to revive a judgment, is to sue out a *sci. fa.* within the time prescribed. The very words of the statute require nothing more, where the object is merely to *continue* the lien. When it is to have execution, a judgment must be entered on the *sci. fa.* When a *sci. fa.* is once issued, it is the same in effect as if it were issued every term, for it is continued from term to term. A *scire facias* is in the nature of an original action, and the defendant may plead to it. *Commonwealth* v. *M'Kisson*, 13 *Serg. & Rawle*, 148. If a plea be entered and the case goes on in regular course to trial, more than five years may elapse before judgment can be obtained: it certainly never could have been intended, that in such a case the lien should become extinct. The legislature did not mean, that at all events, judgment should be obtained within five years; all they did and all they could require, was, that a *sci. facias* should be sued out that it might appear of record, that the judgment was not satisfied. To have required more would have been unjust, for whether a judgment can be obtained within five years must often depend on events, which the plaintiff cannot control. In *Pennock* v. *Hart*, 8 *Serg. & Rawle*, 380, the court said, that the entry of continuances is so purely a matter of form, that they are never entered at all. In this we go beyond the English practice, which requires them to be actually entered, though they may be entered at any time. The English practice of considering a *sci. fa. post annum et diem* discontinued after a year and a day, if the plaintiff do not proceed on it within that term, does not hold here. *Davis* v. *Jones*, 12 *Serg. & Rawle*, 60. It has been the uniform understanding that the issuing of a *sci. fa.* continues the lien of a judgment, without a judgment on the *sci. fa.* The question here is not raised by purchasers, mortgagees, or judgment creditors, who after the expiration of the five years, on searching the records, and finding the judgment not revived within that term, lend their money upon the faith of that fact, but by mortgagees, who have lain by, without proceeding on their mortgages, until the plaintiff has sold the property, and then attempt by availing themselves of a supposed legal advan-

(Vitry for the use of Vitry *v.* Dauci.)

tage, to reap the fruits of his labours ; such a proceeding is not to be favoured.    The act of assembly is in its nature an act of limitations, restricting the lien of a judgment, which before was indefinite ; and as the suing out a writ prevents the statute from running, so the issuing a *sci. fa.* prevents the five years from running against the judgment.    This act should receive, and always has received a liberal construction, to which our opponents are indebted for being permitted to come in under it at all ; for it speaks of purchasers only.    The only object which the legislature had in view, was to give notice that the judgment was unsatisfied, and this is effectually done by taking out a *sci. fa.*  The cases of *Young* v. *Taylor*, 2 *Binn.* 218–229.  *Pennock* v. *Hart*, 8 *Serg. & Rawle*, 380.    *Black* v. *Dobson*, 11 *Serg. & Rawle*, 94. *Comm'th* v. *M'Kisson*, 13 *Serg. & Rawle*, 148, appear to be decisive of the question. The act of 26th March, 1827, *Pam. L.* 129, which provides that the issuing of a *sci. fa.* either with or without entry of judgment thereon shall not have the effect of continuing the lien of a judgment for a longer period than five years from the day on which such a *sci. fa.* issued, shows the legislative construction of the pre-existing law on the subject.

*J. Randall* and *Phillips*, contra..   The question raised by the motions before the court, depends upon the true construction of the Act of 4th April, 1798, and is of the first impression.   It is whether a plaintiff who has obtained a judgment, may by merely issuing a *sci. fa.* and lying, by continue the lien of his judgment as long as he thinks proper.   In giving a construction to the act, the opposite counsel advert to the evil for which a remedy was to be afforded, and not to the remedy itself.   It is the remedy which is to be looked to, to discover the will of the legislature, though the evil to which it was intended to be applied, is to be taken into view in order to come at their meaning.   Now the will of the legislature is expressly declared, as to the remedy, and in terms limits the duration of a judgment, as a lien upon land, to five years.  No argument drawn from the character of the evil can countervail the intention of the legislature thus clearly expressed.   This is not merely the language, but the spirit of the act ; if the mere issuing a *sci. fa.* has the effect of converting a definite into an indefinite lien, it is a violation of the whole spirit of the act.   The question is, whether the plaintiff by his laches shall have a greater advantage than he would have enjoyed, if he had pursued the directions of the act.  The act points out a particular mode of proceeding ; if he had pursued it, his lien would have been gone. Can he better his situation by disregarding the law ?   With the exception of the case of *Young* v. *Taylor*, and the cases founded upon it, there has been in this court as well as in the legislature an uniform opposition to indefinite liens.   In *Cowden* v. *Brady*, 8 *Serg. & Rawle*, 505, it is held that the lien of a *test fi. fa.* continues only while it is diligently pursued, and unless the whole spirit of the decision and the reasoning of the court be disregarded, it decides the present question. The case of *Pennock* v. *Hart*, which establishes the position that the

(Vitry for the use of Vitry v. Dauci.)

five years are to be computed from the expiration of a *cesset execu-tio,* has been thought to have gone too far, and the cases of *Black* v. *Dobson,* 11 *Serg. & Rawle,* 94, and *Bombay* v. *Boyer,* 14 *Serg. & Rawle,* 255, restrain that decision to cases in which the *cesset* appears clearly on the record. So too the death of the debtor within the five years does not prevent the lien of a judgment from expiring at the end of that period, if it be not duly revived, *Fryhoffer* v. *Busby,* 17 *Serg. & Rawle,* 121. Nor does the issuing of an execution within a year and a day, and levying it on personal property, continue the lien of a judgment beyond the five years, *Betz's Appeal,* 1 *Penn. Rep.* 271. The act of 26 March, 1827, is not to be considered as expressive of the legislative opinion, that the law was different before, for nothing is more common than the passage of an act to remove any doubt which may be supposed to exist. Acts, too, merely declaratory of the law, are frequent both in England and this country, and are very useful. The act of 1827 is clearly declaratory, at least in parts, though in other parts, it is re-medial. The legislature could not anticipate what would be the de-cision of the supreme court in future cases, and therefore declared what the law ought to be.

The omission to serve the *sci. fa.* on the mortgagees was fatal to the judgment. The object of the legislature was to give complete no-tice to those who were interested in the land, of the continuance of the lien, and therefore the *sci. fa.* is directed to be served on the terre tenants, and on the defendant, or his feoffee or feoffees. Every one in-terested in the real estate bound by the judgment, who can receive notice, is entitled to it. A mortgagee is an alienee or purchaser, and comes within the meaning of the term feoffee as used in the act, for feoffments, properly speaking, are unknown in Pennsylvania. *Bank of N. America* v. *Fitzsimons,* 3 *Binn.* 342. *Chahoon* v. *Hollenback,* 16 *Serg. & Rawle,* 425.

The opinion of the Court was delivered by

GIBSON, C. J.—Being unshackled by danger of disturbing titles, it is our duty to interpret the statute according to its obvious intent. To ascertain the object which the legislature designed to accomplish, we must look to the mischief and the remedy. Debtors had been prejudiced, and purchasers perplexed by neglect of judgment credi-tors to enter satisfaction of record when actually obtained; and the legislature interfered so far as to command the creditor to acknow-ledge satisfaction within a specified period after request made. This remedy being found inadequate, and the legislature declaring that the provision theretofore " made for preventing the risk and inconveni-ence to purchasers of real estate by suffering judgments to remain an indefinite time *without any process to continue or revive the same,* hath not been effectual;" do what? Direct the party to give notice by process of *scire facias,* or execution according to the stat. *Westm.* 2? Not at all. Had that been the sum of the matter, they would have stopped short with the first section, which declares that no judgment

(Vitry for the use of Vitry *v.* Dauci.) .

shall be a lien for more than five years, unless the plaintiff, within that time, sue out a *scire facias* to revive it: instead of which, there is in the succeeding sections a mandate that the writ be pursued to judgment, the form of which is directed to be, not that the plaintiff have execution, but that the original judgment be revived for another term of five years. The renewal of the lien, therefore, is by virtue of the judgment of the court, the old lien continuing in the mean time, at least to give the plaintiff a reasonable opportunity to prosecute his writ to its consummation. We are not going to say that nothing less than a judgment formally pronounced will be available. On the contrary, we have held a judgment by consent in an amicable *scire facias*, to be a compliance with the spirit of the law; and there would be little difficulty in maintaining that any confession or agreement that the lien endure for the specified period, is within its purview.

Now in directing the mode of proceeding, and the form of the judgment, the legislature evidently contemplated something more than the bare issuing and returning of the writ. The object was to furnish record notice to purchasers, by compelling the judgment creditor to obtain a judicial recognition of his lien, at least once in every successive period of five years. The design was not to suspend the presumption of payment, which arises from lapse of time, but to make it conclusive, if not rebutted within the specified period, by judicial decision or something equivalent. No information would be derived by a purchaser, from a *scire facias* returned, but not prosecuted at the end of, say, eighteen years. In fact the presumption would be stronger than if no writ had been issued, inasmuch as the creditor, having taken a step towards the end of the law, would be less likely to stop short without having obtained satisfaction, than one who had manifested no disposition to stir in the matter at all. Judgments on which executions had issued, were in fact more frequently satisfied, than those on which the creditor had reposed as a security. An unsatisfied execution was never suffered to remain in the sheriff's hands; but after satisfaction had, the creditor never took the trouble to have the writ returned. Would there not be an equal probability of payment, where any other judicial writ had been returned, but apparently abandoned? The natural presumption of the law is, that every judgment is satisfied within a year and a day. The same presumption is applicable to a *scire facias* under the stat. Westm. 2, which is not an original action, but process to *continue* and have execution of the judgment, (2 *Sellon's Pr.* 175), and this species of *scire facias* also, becomes a nullity if it be not prosecuted within the year and a day, (*id.* 277.) In conformity to long practice, we have held that the party, here, is not necessarily, as in England, driven to a new writ; but process thus delayed has never been supposed to prevent the presumption from lapse of time, from running in favour of purchasers. Certainly the legislature has not said that the return of a *scire facias* shall be notice; and it would have let in the very mis-

chief intended to be prevented, if it had. The object in view was to protect purchasers from stale incumbrances, and the means of accomplishment was to make the existence of the lien, a matter of judicial ascertainment in successive periods of five years. But according to the construction contended for, this might be evaded and the matter left as it stood, by a mere turn of the hand. The judgment creditor would have nothing to do, but take the first step, which, according to the argument, would entitle him to a dispensation from all the succeeding ones. Surely the return of a *scire facias* was never intended to be an equivalent for the periodical revivals, which are plainly enjoined; nor the negligence of the creditor, to place him on more advantageous ground than if he had complied with all the requirements of the law.

The lien then may be lost by negligence; and a case like the present seems to be a fair subject for the principle of *Cowden* v. *Brady*, (8 *Serg. & Rawle*, 505,) where the lien of a testatum execution, which, like that claimed for this *scire facias*, would else have been interminable, was lost by neglect of reasonable pursuit. Where there has been an appearance and plea, it may be difficult to lay down a rule applicable to all cases; and it would be improper to attempt it here. Yet it may safely be affirmed that the plaintiff will be entitled to a liberal share of indulgence: possibly the rule of *lis pendens* may be applied with decisive effect. That, however, is not the case before us. The original judgment was entered of March term, 1818, and on the *scire facias*, which was returnable to December term, 1820, judgment might have been signed at March term, 1821; instead of which, it was, for no apparent cause, delayed till 1827—the expiration of a period beyond that, for which the lien would have endured had it been revived at the regular time. What could a purchaser possibly infer from this backwardness of the plaintiff to avail himself of an advantage so palpably within his reach, but that satisfaction had been obtained? The delay was gross negligence: and if the lien would be gone as to purchasers, it is equally gone as to intermediate incumbrancers. We are of opinion, therefore, that the judgment be postponed.