[PHILADELPHIA, FEBRUARY 2, 1832.]

The COMMONWEALTH for the Use of REYNOLDS *against*
STREMBACK and Others.

Whether, where an execution is levied upon all the goods and chattels of an inn-keeper,, consisting of a variety of household and kitchen furniture, and, also, of a quantity of liquors and bar furniture, which are suffered to remain in his possession between thirteen and fourteen months before any step is taken to effect a sale, it retains its lien,, *dubitatur.*

If a plaintiff, after having levied an execution on personal property, directs the sheriff "to stay proceedings until further orders, the levy to remain," the lien of the execution. is gone, as respects third persons, whether purchasers or execution creditors, if the object of the arrangement was a security for the debt; and it is of no consequence whether the execution be returned or not, or whether or not third persons had notice of it.

THIS cause was tried before Judge ROGERS at *Nisi Prius*, when a verdict. was rendered for the defendants.

It now came before the court on a motion for a new trial, founded on an alleged misdirection of the Judge to the jury, and was argued by *Wheeler* for the plaintiff, and *Miles* and *Bradford* for the defendants.

The opinion of the court, which contains a statement of all the material facts, was delivered by

ROGERS, J.—This was a *scire facias* on a sheriff's recognizance. The plaintiff assigns for breach of the recognizance, that the sheriff did not, according to law, well and truly execute all writs and process of the Commonwealth, to him directed, in this, that he refused to execute a writ of *fieri facias*, which had issued at the suit of *William Reynolds* against a certain *Aaron Clements*. The facts, so far as they are at present material, were as follows. To the *March* term, 1828, *William Reynolds* obtained a judgment against *Aaron Clements* for two thousand four hundred and forty-seven dollars, and forty-seven cents, on a bond, with a warrant of attorney, conditioned for the payment of one thousand and seventy-three dollars, and seventy-four cents. A *fi. fa.* was issued to the *June* term, 1828, which was delivered to the sheriff on the first of *April*, 1828. On the 10th of *April*, 1828, the sheriff's deputy made this memorandum, which he attached to the writ, " Levied on all the goods and chattels of *Aaron Clements*, now in his possession at the sign of the *Indian Queen, South Fourth Street*, consisting of a variety of household and kitchen furniture, together with a quantity of liquors and bar furniture."

It appeared in evidence, that the judgment was entered, and the execution issued in consequence of *Clements'* default in the payment of an instalment of two hundred dollars a year, which he had agreed to pay in liquidation of the debt. After the levy *Clements* called on

(Commonwealth *v.* Stremback and others.)

Mr. *Wheeler,* who was *Reynolds'* attorney, and expostulated with him, alleging that the levy would cause his ruin. They then entered into an arrangement, that *Clements* should give two notes for one hundred dollars each, payable in sixty and ninety days; whereupon the plaintiff's attorney gave the following order to the sheriff.

" Sir,—Please to stay proceedings until further orders. Levy to remain.

" *Phila.* 14 *April,* 1828. yours,

*Charles Wheeler.*"

These notes, *viz.* the notes for one hundred dollars each, were duly paid; but in the following year *Clements* had to pay another sum of two hundred dollars, arising out of the same transaction, for which he again gave two notes, which have not been paid. After failure of payment, a bond of indemnity, dated the 29th *May,* 1829, was delivered to the sheriff, and Mr. *Wheeler* gave him, first a verbal, and then a written order, dated the 11th *June,* 1829, to proceed on the *fa. fi.* issued on *Reynolds'* judgment. The sheriff refused to execute the writ, alleging that the levy had remained too long; that there was an order to stay proceedings, and that there had been an assignment to assignees, who were entitled to the property.

*Clements* executed two assignments in trust for certain specified creditors. One dated the 3d of *May,* 1826, to *Benjamin S. Bonsall, Thomas Cooper* and *Charles Champion.* The other dated the 13th of *May,* 1829, to *Peter Wager* and *Benjamin S. Bonsall.* On the second assignment, an inventory was filed, and a bond given according to the directions of the act.

The plaintiff asks for a new trial on the ground of misdirection in the charge to the jury in this, that if the second assignment was good, it was of no manner of consequence, whether the assignees, or those claiming under them, had or had not notice of *Reynolds'* execution and levy, because of the order to stay proceedings; that the direction for the levy to remain, would be of no effect against them.

2. That the lien of *Reynolds'* execution was waived in favour of *Palmer's* execution, by reason of the order to stay proceedings, notwithstanding the direction for the levy to remain.

As both points involve the same principles, the correctness of the charge, might be rested on the effect of the order to stay proceedings, but I think it proper to notice some other matters connected with the case. The levy was made on the 10th of *April,* 1828, and it was not until the 30th of *May,* 1829, that Mr. *Wheeler* gave a verbal order, and on the 11th of *June,* 1829, a written order to proceed, so that for thirteen or fourteen months, the goods were suffered to remain in the possession of *Clements,* without any step having been taken to effect a sale. In *England* the practice is to remove the goods, and the fact, that they are not removed, is a badge of fraud, so as to render them liable to a subsequent execution, or to pass into the hands of a purchaser, discharged from the lien of the execution creditor. In this state we have departed from the strictness of the

(Commonwealth *v.* Stremback and others.)

*English* rule. It is not the practice to remove goods and the fact, that they are not so, is not a badge of fraud. There is no certain rule, how long they may with safety to the execution creditor be permitted to remain in the possession of the debtor. The cases have varied from one day to upwards of two years. *Levy* v. *Wallis,* 4 *Dal.* 167. *Chancellor* v. *Phillips,* 4 *Dal.* 213. *Water's Ex.* v. *M'Clellan et al.* 4 *Dal.* 208. But *vide United States* v. *Conyngham,* 4 *Dal.* 358. The departure from the *English* rule is said to have arisen from sentiments of humanity and the peculiar necessities of the country; and in *Chancellor* v. *Phillips,* Chief Justice SHIPPEN says, " There is an obvious and material distinction between a levy on household furniture and on merchandise, or goods for sale. In the former case, the court has never allowed the plaintiff to lose the lien of a prior execution levied, because on principles of humanity he allowed the furniture to remain on the premises in the possession of the defendant. But it would be going farther than the reason of our decisions, and might introduce collusion and fraud, if we were to authorise or countenance such a practice indiscriminately in every case." We would not wish to be understood as attempting to impair the force of the earlier decisions, but it is necessary to inquire whether this be a case, which comes within the reason of the exception. Here there was a levy on all the goods and chattels of an inn-keeper, consisting of a variety of household and kitchen furniture, and also a quantity of liquor and bar furniture. There is no pretence to say, that part of the articles, on which the levy was made, came within the reason of the exemption of household goods. The beds on which he lodges his customers, with the liquor and food he supplies them, are the implements of his trade, the means by which he carries on his business, and no more entitled to protection on principles of humanity, or the peculiar necessities of the country, than the goods of the merchant, or the tools of the tradesman and mechanic. All the furniture of the house, except so much as may be necessary for the accommodation of the family, in a public inn, is intended for the same purpose. And how far and to what extent household furniture may be permitted to remain with the debtor, without the legal consequences which attend property of a different description, has not yet been decided. The principle has heretofore been laid down generally, that the act of suffering household goods to remain in the hands of the defendant after they are levied on, furnished no presumption of fraud here, as it did in *England.* Whether this extends to all a debtor's furniture, however valuable, without limitation, may, perhaps, some day be worthy of serious investigation. The exemption of any species of property is to be regretted, as every day's experience shows, that it tends to produce collusion and fraud. That there should be some limit, I think apparent, and what it may be, will be for the court to determine when the question arises.

I will now consider the effect of the order to stay proceedings, the levy to remain. As between *Clements* and the execution creditor

the lien remained, for that was the contract as appears from the testimony and from the order itself.   But if the intention of the parties was fraudulent, or the object of the arrangement was a security for the debt, the lien of the execution was gone as respects third persons, whether purchasers or execution creditors.   The object of an execution is the satisfaction of the debt, and not security for it.   The law will not endure the levying an execution on goods only as a security.   1 *Wils.* 44.   *Bradley* v. *Wyndham*, 8 *Serg. & Rawle*, 510.   Suffering goods, which are levied on, to remain in the possession of the debtor under an arrangement such as the present is fraudulent *per se*, as against the policy of the law.   And from this it results, that it is of no consequence, whether the execution is returned or not, or that third persons had notice of the agreement, that the levy should remain.   The rule is intended to prevent fraud, and this can be most effectually done, by treating the property in the same manner as if no levy had in fact been made.   It is sufficient for a purchaser or execution creditor to know, that the execution is not intended to obtain satisfaction, but that the purpose of the levy is a mere security for the debt.   The court will not enquire whether in fact there was fraud or not.   It is an inference of law, which cannot be rebutted, which constitutes the levy so far as respects third persons, fraudulent *per se*.   If this should be permitted, I cannot perceive, how it would differ from a mortgage of personal property, the mortgagor retaining the possession.   And that a mortgage of goods, with possession retained by the mortgagor, is fraudulent in law, has been decided in *England* and in this country.   To give a creditor priority by such a mortgage, when the mortgagor is allowed to appear and act as owner, is enabling him, as is said by *Lord Mansfield* in *Worseley* v. *De Mattos* 1 *Burr.* 467, and by the present Chief Justice in *Clow* v. *Woods*, 5 *Serg. & Rawle*, 275, to impose on mankind by false appearances.   A question, similar in every essential feature to this, came before the court in *Eberle* v. *Mayer*, 1 *Rawle*, 366, and it was there held, that an order by an execution creditor to the sheriff, to stay all further proceedings on his execution at his risk, until further directions, is a waiver of his priority in favour of a second execution received by the sheriff during the continuance of the stay.   It is true as is there said, that merely leaving the property in the possession of the defendant in the execution, though with the plaintiff's consent, is not *per se* fraudulent, either as to subsequent creditors or purchasers, but where the plaintiff directs the sheriff to delay the execution or sale, the law is otherwise.   *Berry* v. *Smith*, 3 *Wash. C. C. Rep.* 60, is, if possible, still nearer the point.   The change of possession, as was there said, gives notice to all the world of the real situation of the debtor in relation to the property, so seized, and prevents them from being deceived by the appearance of wealth, to which the debtor has no just pretensions.   If the execution is delivered to the officer with orders not to levy it at all, or until further orders, the purpose of the delivery is not answered, and

all the legal consequences of the measure, in respect to creditors and purchasers, who would otherwise be affected by it, would be defeated. If the officer is ordered to levy on, but to leave the property with the owner, until he shall be otherwise directed, the party undoes by such an order all the officer does by the seizure; it works no charge of property; it is no levy in respect to third persons.

It has been seen, that in *Pennsylvania* it is not necessary that the officer should remove the property, nor put a person in change of the goods, nor sell them immediately, if this be done in a reasonable time. I would not, however, think it safe for creditors, at this day, when the condition of the country has so materially changed, to permit the levy to remain without sale of the goods, or some person having them in charge, so long a time as would seem to be authorised by the earlier cases. Here the Judge, who tried the cause, left it as a fact for the decision of the jury, whether this transaction was intended as a security for the debt, and it would be difficult to imagine, how the jury could have come to a different conclusion from that which they did. It is manifest that the levy was to remain in the nature of a security for the debt.

Motion for a new trial overruled, and judgment on the verdict.