# Allen *versus* Liggett.

1. Liggett issued a summons in trespass q. c. f. against DuBois (who was summoned) and Allen, as to whom the return was "Nihil;" the declaration was against both, reciting that Allen had not been served; the verdict and judgment were against DuBois, but not realized: *Held,* that another action for the same cause could be maintained against Allen.

2. The præcipe in the second suit was for an *alias* against Allen alone, and referred to the former suit: *Held,* that an amendment striking out "*alias*" in all the proceedings was properly allowed.

3. When a summons is not served, a plaintiff at common law may prevent its abatement by entering continuances from term to term, and then issue an

[Allen v. Liggett.]

alias to bring in the defendant, and thus prevent the bar of the Statute of Limitations.

4. The plaintiff may abandon his first summons and begin anew.

5. An alias scire facias issued after five terms from the former, is insufficient to preserve the lien of a judgment which had expired in the interval.

6. The spirit of the present age is to reach the merits of a case *ut res magis valçat quam pereat.*

7. Cridland v. Floyd, 6 S. & R. 412; Taylor v. Henderson, 17 S. & R. 453, distinguished.

March 27th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Clinton county :* Of January Term 1875, No. 85½.

On the 27th of March 1868, Benjamin Liggett commenced an action of trespass q. c. f., No. 115, to May Term 1868, against John H. Allen. The præcipe was : " Issue alias summons in trespass *quare clausum fregit,* to recover treble damages for cutting timber trees. *Vide* original summons, No. 262, May Term 1866."

The writ was in the ordinary form of an original summons.

On the 12th of May 1868, a rule was granted to show cause why the alias writ of summons, and all proceedings thereon should not be set aside.

On the 10th of November 1870 the record was amended by omitting from the proceedings the word " alias," and all references to any former proceedings against the defendant.

On the 25th of November the plaintiff's rule was discharged.

The declaration averred that the defendant broke and entered the close of the plaintiff, and unlawfully and without the consent of the plaintiff, cut down certain timber trees, and converted them to his own use, and cut down other trees, without alleging a conversion, contrary to the Act of Assembly of September 1st 1824, &c.

On the 10th of August 1872 the defendant pleaded " Not guilty ;" he pleaded also a special plea, viz., that the plaintiff should not maintain his action " for or on account of any supposed trespasses committed before the 26th day of April, A. D. 1866, because, he says, that the said plaintiff, on the 26th day of April, A. D. 1866, to No. 262, May Term 1866, in the Court of Common Pleas of Clinton county * * * by an original writ of summons in trespass q. c. f., impleaded one James DuBois jointly with the said defendant, and which writ was duly served on the said James DuBois, and so returned by the sheriff of said county, and which said writ of summons was, as to the defendant, returned *nihil habet* by the said sheriff; * * * that in said suit the said plaintiff impleaded the said James DuBois in a certain plea of trespass for committing the very same supposed trespasses committed previous to the 26th day of April, A. D. 1866, in the said declaration above mentioned ; whereupon the said James DuBois afterwards pleaded that he, the

[Allen *v.* Liggett.]

said James DuBois, was not guilty of the said suppósed trespasses * * *, and issue was thereupon joined upon the said plea between the said plaintiff and the said James DuBois ; and thereupon * * * the said issue came on to be tried, and was then and there tried in due course of law by a jury * * * and the said jury returned a verdict for the said plaintiff and against the said James. DuBois for the sum of $468 * * * and on the 11th day of May, A. D. 1868, judgment was duly entered on said verdict for the sum of $468 * * * which said judgment still remains in full force. and effect, not in the least reversed or made void. * * * "

The case was tried December 19th 1872, before Williams, P. J., of the 4th district.

Both parties gave evidence under the plea of "Not guilty." Defendant gave in evidence also the record of the suit set out in his special plea, viz.: "Summons trespass c. q. f., to May Term 1866, No. 262, Benjamin Liggett against James DuBois and John H. Allen.  Return served on James DuBois, and '*nihil habet*,' as to J. H. Allen."

The declaration in the suit of 1866 complained "that whereas the said James DuBois and one John H. Allen (as to which John H. Allen the writ of summons was returned '*nihil habet, pro ut patet per recordum*') had broken and entered plaintiff's close, and cut his timber, &c., as in the declaration in this case."

The verdict was for the plaintiff in that case, for $468, and judgment was entered on the verdict.

On the record of that case it is noted, "Exit alias summons, No. 115, to May Term 1868."

The jury found a special verdict, as follows :—

" We find that the defendant, by his employees, cut and carried away from the tract of land described in plaintiff's declaration, timber, to wit : pine, oak, poplar and linn, amounting in all to one hundred and fifty-three thousand feet, for which the plaintiff is entitled to recover $612, single damage.  We further find that defendant in like manner cut and left lying on said tract, pine, oak, poplar and linn, in all twelve thousand feet, for which plaintiff is entitled to recover $48, single damage.

" We further find that the whole of said timber was claimed for by the plaintiff in an action of trespass, No. 262, of May Term 1866, Common Pleas of Clinton county, in which a recovery was had against one James DuBois.

" If the court be of opinion that the said recovery of the judgment entered therein, and now remaining unsatisfied, is a bar to a recovery in this case, then we find for defendant."

In delivering the opinion of the court on the special verdict, Judge Williams said :—

" * * * The position taken is, that as the summons issued against both DuBois and Allen, the plaintiff must be held to have

[Allen v. Liggett.]

elected to proceed against the trespassers *jointly;* and that taking a verdict against DuBois was equivalent to the entry of a nolle prosequi against Allen, or to a verdict in his favor.

"The cases cited satisfy us that if Allen had been served, and the plaintiff had gone to trial against DuBois alone, the verdict might have had the effect claimed for it: 2 Sellon's Practice 337; Breidenthal *v.* McKenna, 2 Harris 160; Cridland *v.* Floyd, 6 S. & R. 412.

"But trespasses committed by more than one are joint and several, 'and the trespassers may be sued severally, though the plaintiff can recover but one satisfaction:' Kennedy *v.* Philipy, 1 Harris 409. And in the same case it is said that the plaintiff may 'severally proceed to judgment against all, and have his election *de melioribus damnis,* unless he has actually received satisfaction from one.'

"In the case at bar the plaintiff endeavored to proceed against the trespassers jointly, but was able to serve but one of them with process. He has proceeded against him 'severally to judgment.' What prevents his proceeding now to judgment against the other defendant since served? Not his own neglect to compel an issue in the former case, for the defendant was not then served. Nor yet a 'nolle prosequi, retraxit, release or acquittal,' growing out of the venire or trial against the defendant pleading only; because the defendant who pleaded was the defendant who was served, and the only one. If there is any reason why the plaintiff should not now recover, it must therefore be found in the fact that Allen was named in the præcipe and summons.

"It would follow, then, that the plaintiff was bound to wait until service could be had upon Allen (for we have no process of outlawry) before proceeding against DuBois, or abandon his claim against all but the defendant served. We think it more reasonable to hold that the plaintiff, finding himself able to serve but one of the defendants, had the right to proceed against the defendant so served severally to judgment, precisely as though the defendant served had been named alone in the præcipe. By the return of the writ DuBois only was brought in; he answered, and the jury tried the issue so raised. The court had no jurisdiction over the defendant not served. He lived in a remote part of the Commonwealth, and could not have been concluded by the result of the trial of that cause, because, not having been served, he had no opportunity to be heard. Nor ought the plaintiff to be concluded as to Allen, for the same reason, viz.: he was not served, and could not, therefore, be compelled to answer.

"Nor does the other position urged upon our attention, viz., that the recovery against DuBois passed the title to the timber trees claimed for from the plaintiff to DuBois, strike us as tenable. As to a stranger to the trespass, or a vendee holding by purchase

[Allen *v.* Liggett.]

from the trespassers, or either of them, this might be true; but if the doctrine of Kennedy *v.* Philips, 1 Harris 409, be the law, then it does not lie in the mouth of one joint trespasser to allege, when sued severally, that a several judgment, entered an hour, a day or a year earlier in point of time against a fellow trespasser, protects him from all liability for his trespass.

" If trespasses committed by more than one are joint and several, and the trespassers may be proceeded against severally, it must happen that one judgment will be prior in time to another. It may happen that one judgment will be larger than another. The plaintiff is then put to his election *de melioribus damnis.* But if the position of the defendant's counsel be correct, there could be no several judgments against the several trespassers, and of course no election *de melioribus damnis;* but the judgment first rendered would pass the title of the plaintiff to the defendant in that case, and plaintiff's right to sue, as well as his title to the property— the subject of the action—would be divested by the rendition of judgment in the case first tried."

Judgment was accordingly entered for $1932, double and treble damages.

The defendant took a writ of error, and assigned for error,

1. Allowing the amendment to the record.
2. Entering judgment for plaintiff on the special verdict.

*C. G. Furst* and *S. Linn,* for plaintiff in error.—At common law when a tort was committed, or a joint and several contract entered into by two or more persons, the party with whom the contract was made, or against whom the tort was committed, had his election to sue jointly or severally : 1 Chitty's Pleading 86 ; Bigelow on Estoppel 49, 57 ; Lovejoy *v.* Murray, 3 Wall. 1, 11 ; Downey *v.* The Bank, 13 S. & R. 288. The plaintiff must sue all jointly, or each separately : 1 Saund 291 *c.* As to whether a judgment recovered against one tort-feasor sued alone is a bar to an action against the others, the authorities do not agree. In some of the cases, English and American, it is held that a judgment recovered against one of several joint tort-feasors is a bar to an action against the others ; in others it is said to require the issuing of an execution ; and in others that nothing short of satisfaction will be a bar : Brown *v.* Wootton, Cro. James 73 ; Bigelow on Estoppel 49 ; Lovejoy *v.* Murray, 3 Wall. 1 ; Livingston *v.* Bishop, 1 Johns. 290 ; Buckland *v.* Johnson, 15 Com. B. 145, 80 E. C. L. Rep. ; Brown *v.* Cambridge, 3 Allen 474 ; Stone *v.* Dickinson, 5 Id. 29 ; 3 Penna. Blacks. 194 ; 1 Greenl. on Evidence, sect. 409. When the plaintiff here brought a joint action he made his election to treat his cause of action as joint ; his cause of action must now be considered to every legal intent as joint only : Reed *v.* Garvin, 7 S. & R. 363 ; Beltzhoover *v.* Commonwealth, 1 Watts 127. The

[Allen *v.* Liggett.]

judgment taken against James DuBois in the joint action of trespass, if rendered in form, would be that the plaintiff therein recover his damages of James DuBois only: Shively *v.* The United States, 5 Watts 332. " The language of the Act of 6th of April 1830, Pamph. L. 277, 1 Br. Purd. 826, pl. 34, 35, is very explicit and must be confined to the cases it enumerates:" Walter *v.* Ginrich, 2 Watts 204. At common law when an action is brought against two jointly for a trespass, and one is not served with process, the plaintiff cannot have judgment against the defendant served without entering a *nolle prosequi* against the one not served, which is equivalent to an acquittal of the party not served: 2 Sellon's Pr. 337; Breidenthal *v.* McKenna, 2 Harris 160; Salmon *v.* Smith, 1 Saund. 207 *a*, note 2; Bosworth *v.* Sturdevant, 2 Cush. 400; Moore *v.* Hepburn, 5 Barr 399. But the case which is decisive of this point is Cridland *v.* Floyd, 6 S. & R. 412; Wakeley *v.* Hart *et al.*, 6 Binn. 316.

*C. Corss*, for defendant in error.—At common law, when necessary to prevent a failure of justice, the courts allowed amendments: 1 Ch. Pl. 13 note; 3 Chitty's Gen. Prac. 173, 174. Such amendments being in the discretion of the court could not be reviewed by writ of error. The Act of 1806 made the errors therein enumerated a matter of right, and their refusal can be assigned for error. The amendment granted in the court below not being within that act, the granting of it cannot be reviewed here: Rhoads *v.* Commonwealth, 3 Harris 277. In Pennsylvania the law is that the plaintiff may bring as many several actions as he chooses against the joint trespassers, proceed to judgment in one or all of them, and then, electing *de melioribus damnis*, collect the largest one: Kennedy *v.* Philipy, 1 Harris 409. From the return of nihil there was no suit pending against Allen: Allen *v.* Mandeville, 26 Miss. 397; Rose *v.* Oliver, 2 Johns. 365; Purviance *v.* Dryden, 3 S. & R. 405; Heydon's Case, 11 Rep. 5; Livingston *v.* Bishop, 1 Johns. 290; 2 Tr. & H. 51; Bradley *v.* Givens, 3 Bibb. 194; Floyd *v.* Browne, 1 Rawle 121; Ammonett *v.* Harris, 1 Hen. & Munf. 496; Burnam *v.* Webster, 5 Mass. 270; Rose *v.* Oliver, 2 Johns. 365. Verdict without judgment concludes no one: Saylor *v.* Hicks, 12 Casey 394. Nor confession without plaintiff's consent: Finney *v.* Ferguson, 3 W. & S. 415.

Chief Justice AGNEW delivered the opinion of the court, May 8th 1876.

A brief statement of facts is necessary to an understanding of the questions in this case. On the 26th of April 1868, Liggett brought an action of trespass *quare clausum fregit* against DuBois and Allen. Allen was not served, and the declaration reciting the return of *nihil* as to Allen, set forth a joint trespass. The case

[Allen *v.* Liggett.]

was tried against DuBois, a verdict against him, December 19th 1869, for $468, and judgment May 11th 1868.

On the 28th March 1870, Liggett issued an *alias* summons, No. 115, May Term 1870, against Allen, which was served on him November 10th 1870. The record was amended by striking out the word "*alias*" and all reference to former proceedings against Allen. A declaration was filed, a trial, and verdict, and judgment against Allen for treble damages, $1932. Two questions are raised: 1. Was it error, by an amendment, to permit the action to stand as a separate suit against Allen? 2. Was Allen discharged by the former proceeding against DuBois? The determination of the first question depends upon the decision of the second, for if a separate action can be maintained against Allen after the recovery against DuBois, the amendment was proper. Calling the second action an "*alias*" did not make it so conclusively. If Liggett could maintain a separate action after recovery against DuBois, he was not bound to enter the continuance in the first action to keep it open as to Allen, but might proceed by a separate summons. Where a summons is not served, a plaintiff at common law may prevent its abatement by entering the continuances from term to term, and then issue his alias to bring in the defendant. In this wise he may prevent the Statute of Limitation from barring his action: Westmoreland Bank *v.* Rainey, 1 Watts 30. But there is nothing to prevent his abandoning his first summons and beginning anew. Indeed, at common law, in the case of a scire facias to revive a judgment, the alias was treated as abandoned if not issued within a year and a day: 2 Sellon's Practice 189, 190; Vitry *v.* Dauci, 3 Rawle 13; Davidson *v.* Thornton, 7 Barr 134. So an alias sci. fa., issued after a lapse of five terms from the former, is considered inefficient to preserve the lien of a judgment which has expired in the interval: Westmoreland Bank *v.* Rainey, *supra;* Silverthorn *v.* Townsend, 1 Wright 267. Before the Act of 1827, a testatum fi. fa. might be thus abandoned: Cowden *v.* Brady, 8 S. & R. 505. In the case before us, eight terms, or nearly two years, had elapsed before the so-called alias was issued. We do not say that the continuances might not have been entered up to continue the first action. But clearly, if the plaintiff chose to abandon it he could, if he had a right to proceed separately against Allen; and in that event the amendment was not erroneous.

This brings us to the second question. The essential difference between this case and many of those cited by the plaintiff in error is, that here there was no service of the first writ upon Allen, and he was suffered to drop out of the case. This distinguishes it from Cridland *v.* Floyd, 6 S. & R. 412. There all were served, two pleaded to issue, and rules to plead were issued against the others. A trial, verdict and judgment took place as to the two who pleaded. It was held that, under the circumstances, the trial and judgment were equivalent to a nolle prosequi and discharge of the others.

[Allen v. Liggett.]

Cridland v. Floyd was followed in Breidenthal v. McKenna, 2 Harris 160, a case similar in its facts. As the weight of the argument of the plaintiff in error is thrown upon Cridland v. Floyd, it is proper to notice it particularly. The decision was made in the year 1821, before the spirit of liberal amendment had prevailed in the state. The opinion was by Justice DUNCAN, a most learned and able judge, but a strict adherent to common-law rigidity. He admits that this branch of the law of actions is very difficult, and proves his concession by a most elaborate review, in eight pages, of the numerous and discordant precedents, concluding with an apology for its length by saying : " To explain the reasons of the opinion, required a general view of the clashing opinions and inconsistent decisions on this dry but curious subject." The case is evidently not a precedent to bind us, certainly not beyond its facts, in view of the present liberal doctrines of amendment, sanctioned by so many statutes and decisions since made. The spirit of the present age is to reach the merits of a case, *ut res magis valeat, quam pereat.* Even the earlier decisions tended this way. The want of service of the writ has been held to be a very important fact. Thus, in Purviance v. Dryden, 3 S. & R. 402, a defendant not served was objected to as a witness, on the ground that he was a party to the suit. Chief Justice TILGHMAN said the writ was issued against him as well as Purviance, but he never was summoned, and the action, according to our practice, was carried on against Purviance alone. In fact, the witness was not a party to the suit, and therefore there is no force in this objection. The case of Taylor *et al. v.* Henderson, 17 S. & R. 453, is not contradictory. It was decided on the ground of Page's interest, and he was in fact served with the writ, and joined in a commission to take testimony, though he did not plead to issue. The principle of Purviance v. Dryden was followed in Kennedy v. Philipy, though the case was not cited in the report : 1 Harris 408. There a tort-feasor not joined in the action was held to be a competent witness against a number of co-trespassers, reversing the opinion of Judge BLACK, who thought him incompetent, the action being joint against some of them. There is no ground in the authorities for the application of the maxim *stare decisis* to the case before us, and we are free to decide it upon principles of justice and proper analogy to other actions.

It cannot be pretended that there is justice in permitting a co-trespasser to escape the consequences of his wrong, especially in a case where his wilful injury is so obnoxious, the law visits his wrong with treble damages. Why should the fact that he was not served with the process in the former action discharge him? It was no fault of the plaintiff, or of the sheriff, if he could not reach him. And at this point it is proper to notice the difference between similar actions brought in this state and in England. Here we

[Allen *v.* Liggett.]

have no process of outlawry to reach the property of the defendant. There the action is suspended until, by outlawry, the defendant not served can be reached through his effects. Remarking upon this, Chief Justice TILGHMAN said: "Having no process of outlawry, we are in a worse situation than they are in England. With us the plaintiff is without remedy:" Downey *v.* Bank, 13 S. & R. 288. With justice on this side, and controlled by no stubborn precedent, we cannot hesitate to adopt the analogy presented by the legislation in reference to joint contracts. Under the Act of 6th April 1830, a judgment against one of several joint obligors, promisors or partners, is no bar to a suit against the others not served. So, confession of judgment is not a bar. Under the Act of August 2d 1842, several judgments against defendants are good in the same action, and may be revived, or the money collected as upon one judgment. There is still a further Act, in *pari materia,* of April 11th 1848, 1 Brightly's Purd. 826, pl. 34, 35, 36, 37, 38, 39. Adding to this the ample power of amendment conferred, even to the change of the form of action and the correction of verdicts, we may repeat the language used in Weikel *v.* Long, 5 P. F. Smith 241, that "the whole common-law theory on the subject of actions against joint debtors, partners and judgment-defendants has been deranged by legislation." There is a greater reason for applying the principles of these acts to joint tort-feasors than to joint contractors, for the former have no ligament of contract with the plaintiff to bind them together. They cannot say to him, this is the form of your agreement with us, and you must abide in it. Upon the whole case, we perceive no error to correct, and the judgment is affirmed.