## HOWELL *against* ALKYN.

### APPEAL.

If goods levied upon by the sheriff under a *Fieri Facias*, be left in the defendant's possession, with the plaintiff's permission, and before a sale, a second execution be levied upon them, the lien of the first execution is not lost, unless there be fraud, which may be inferred from circumstances.

THIS case came before the court on an appeal from the decision of the District Court for the city and county of *Philadelphia*, under the act of assembly of the 16th of *April*, 1827, "relative to the distribution of money arising from sheriffs' and coroners' sales," &c.

A case was stated for the opinion of the District Court, from which it appeared, that *Howell* obtained a judgment in that court against *Alkyn* on the 15th of *September*, 1826, for one thousand three hundred and seventy-two dollars. On the 20th of the same month, he issued a *Fieri Facias*, returnable to the following *December* Term. On the 26th of *September*, 1826, a levy was made by sheriff *Douglass* on *goods*, but of what description, the case did not state. On the next day, the plaintiff ordered the sheriff to suffer the goods to remain in the defendant's possession, at the plaintiff's risk. On the 9th of *December*, 1826, the plaintiff gave the sheriff orders to sell, and on the 16th of that month, the goods were sold by sheriff *Douglass*. On the same day, but previous to the sale, notice was given to him of the claim of Messrs. *Earp*, for the use of *Wardell*, who had, on the 6th of *November*, 1826, obtained a judgment in the same court against *Alkyn*, for two hundred and eighty-nine dollars and sixty-seven cents, on which they issued an execution on the 6th of *December*, 1826, and put it into the hands of sheriff *Strembeck*, the successor of Mr. *Douglass*, with instructions to levy immediately. Under this writ a levy was made on the 9th of *December*, 1826, on the property which had been levied upon under *Howell's* execution, but all knowledge of the first levy was denied by the plaintiffs in the second execution. Sheriff *Strem-*

(Howell *v.* Alkyn.)

*beck* returned, that the property levied on by him had been levied on, and was claimed by sheriff *Douglass.*

The proceeds of sale, which were insufficient to satisfy both executions, were paid into court, under a rule, obtained by the second execution creditor. Both execution creditors obtained rules to show cause why they should not take out of court, the amount of their respective debts. The District Court awarded the money to the first execution creditor, directing, however, that it should remain in court, to abide the appeal entered by the second execution creditor.

*Toland,* for the appellant, admitted, that according to some early decisions of this court, a plaintiff who permitted goods which had been levied upon to remain in the possession of the defendant, did not lose his lien upon them; but observed, that these decisions grew out of the peculiar situation of the country at that time, and were confined to household furniture. The inconvenience resulting from such a practice, had latterly induced, even on the part of our state courts, a closer adherance to the common law, which treated such conduct as fraudulent; and the Circuit Court of the *United States* for the *Pennsylvania* district, had always conformed to the settled law of *England.* The order, to leave the goods in the hands of the defendant, which was equivalent to an order to stay the proceedings, rescinded the levy. He cited, 2 *Tid. Pr.* 919. *The United States* v. *Conyngham,* 4 *Dall.* 358. *Clow* v. *Woods,* 5 *Serg. & Rawle,* 275. *Cowden* v. *Brady,* 8 *Serg. & Rawle,* 505. *Babb* v. *Clemson,* 10 *Serg. & Rawle,* 419. *Hunt* v. *Breading,* 12 *Serg. & Rawle,* 37. *Dean* v. *Patton,* 13 *Serg. & Rawle,* 341. *Hower* v. *Geesaman,* 17 *Serg. & Rawle,* 251. *Barnes* v. *Billington,* 1 *Wash. C. C. Rep.* 29. *Berry* v. *Smith,* 3 *Wash. C. C. Rep.* 60.

*Page,* for the appellee, was stopped by the COURT, whose opinion was delivered by

HUSTON, J.—The material facts are as follows:—On the 20th of *September,* 1826, *Howell* put into the hands of the sheriff a *Fieri Facias,* returnable the 4th of *December,* 1826. On the 21st of *September,* 1826, the sheriff made a levy, by going to the house and seizing part of the personal property in the name of the whole. Next day, a schedule of all the personal property was given to him, and annexed to the writ. No person was left to take charge of the goods, The plaintiff told the sheriff to let the goods remain in the defendant's hands at my, (the plaintiff's) risk. On the 9th of *December,* 1826, the plaintiff gave the sheriff orders to sell. On the 16th of *December,* 1826, the goods were sold. But in the meantime, another plaintiff had obtained a judgment, and on the 6th of *December,* 1826, issued an execution, which was put into the hands of the sheriff, with directions to levy and sell immediately. A new sheriff had come into office since the former levy. On the 9th of *December,*

(Howell *v.* Alkyn.)

1826, this second execution was levied. The sheriff did not know of the former levy at that time, but in the evening, when he went to put a man in the house, he found one there by the former sheriff. The second levy, as endorsed, mentions the former levy, and that the property is claimed by it. The sale was under both executions, and the question is, to whom the money belongs. The District Court awarded it to the first execution.

I do not refer particularly to this case, nor mean to censure the gentleman who argued this cause, but say, that the constant recurrence in matters of long and every day practice, and of frequent decision, to the practice of other countries; and the censure more than implied, that our practice, where it differs from that of *England*, must be wrong, is to me, rather painful.

The usages of every nation are founded on what is most convenient and useful to themselves; unless where they admit they are incapable of thinking and acting for themselves.

At the first settlement of this country, and in many parts of it yet, money is scarce, and more so at some seasons of the year than at others; personal property consisted of necessary articles of household furniture, necessary implements of a trade, or husbandry, and the necessary horses and cattle on the farm; each had as much of this property as was absolutely necessary, and few wanted more, or if they did want it, very few were able to purchase it, and pay cash for it. If sold on execution, it was almost ruin to the debtor, and produced small relief to the creditor, for it sold almost for nothing: often, if advertised, no bidder attended. The fear of ruin from a sale, made the defendant use every exertion; harvest came, and he thrashed and sold his crop, or he sold lumber, or he borrowed, or in all these ways he paid the debt. This was better for both parties; and from a state of things, of which this is not a highly coloured picture, grew the usage of not proceeding to a sale at once, when an execution was put into the hands of the sheriff or constable. Necessity, in the first instance, and mutual benefit, began and matured it.

I deny the assertion of Judge WASHINGTON, that if the plaintiff directs the sheriff to delay the sale, one day avoids his levy as much as a year. Literally, and in all cases, he did not mean that; his meaning must have been, that if the levy is designed as a fraud and cover, it is void at once, and from the instant it is made.

There are expressions that go to show, that the indulgence given in this country, is peculiar to household furniture. This doctrine is only known in cities, and is not long known any where. *Levy* v. *Wallis*, 4 *Dall.* 167, was stock on a farm; and the implements of husbandry, and tools of a tradesman, are as often left for a considerable space after levy, as any other kind of property; so, horses and cattle, because, to remove and keep them, is expensive. Store goods, or articles which the defendant keeps expressly for sale, will probably be sold if left; such may be bound by stricter rules.

(Howell *v.* Alkyn.)

Property was not moved from the possession of the defendant, because it increased expense, and increased hardship, without any benefit; nay, to the injury of the creditor. If the horses or the ploughs were taken from the defendant, the crop, which would pay the plaintiff, could not be raised. There was no risk in leaving them with the defendant; it was, and it is, unknown in the country, that a man, having a family, shall run away and leave them because of debt, or secrete property, to the injury of a sheriff who has levied on it, and trusted to his honesty, that it will be found at the day of sale. Add to this, that in more than half the cases in which executions are levied on personal property, the money is paid without a sale. I speak of the country, but suspect the case is nearly the same in the city. On this state of things, who will say, the delay of a few days to sell, is fraudulent or unlawful, or in any way objectionable? None but those who do not know the situation and course of business immediately around them, or who cannot think or feel.

In this case there is no fraud stated, and nothing from which to infer it. The declaration, that the goods might be safely left in the defendant's hands, till sold, has no effect; nor has any other declaration, or act of the plaintiff, if it does not go to prove, that the levy was made to cover the goods for the defendant. Mere expressions of compassion, of friendship, or of kindness, or of confidence, do not destroy or affect the plaintiff's rights; nor will an express order to delay the sale for a few days, within which the defendant expects to get the money, or within which he can haul in his crop, or till one of his family is off the bed of sickness, destroy, or even affect his rights.

In *Doty* v. *Turner*, 8 *Johns. Rep.* 16, the execution was delivered on the 2d of *June.* The instructions of the attorney were, that the plaintiff did not wish to distress the defendant, but wished a levy made to secure his debt: That if the property was suffered to remain in the hands of the defendant, the sheriff would not be considered liable in case the property was squandered. The levy was made and nothing more done, nor any other instructions given, until after the return of the execution, nor till after the receipt of another *Fieri Facias,* at the suit of another plaintiff, which was levied on the same property. The property was sold, and the sheriff returned these facts specially. The defendant was father-in-law of the plaintiff in the first execution. The plaintiff in the first execution sued the sheriff, and the court decided, that he was entitled to the money. There was no agreement between the plaintiff and the defendant, that the execution should sleep in the sheriff's hands. If a long time had elapsed between the first and second execution, it might have been left to the jury as a presumption of fraud. Fraud is the only ground on which a delay to sell can be impeached. *Whipple* v. *Foot,* 2 *Johns. Rep.* 418.

In 11 *Johns. Rep.* 110, the execution was levied, and the sheriff

(Howell *v.* Alkyn.)

directed not to sell. This was in *June*, 1807. In *May*, 1808, another execution came into the sheriff's hands. In *August*, 1808, the plaintiff in the first execution told the sheriff not to sell, unless pressed by younger executions. In *September*, the property was sold, and the money awarded to the second execution. But here there were express directions by the first plaintiff not to sell. In 17 *Johns. Rep.* 274, a *Fieri Facias* was delivered on the 13th of *October*, 1817, with directions to make a levy on the property of the defendant, but to do nothing until ordered, unless crowded by younger executions, but by no means to let the execution lose its preference. On the 5th of *May*, 1818, another execution came to the hands of the sheriff, returnable the 16th of *May*. On the 6th of *July*, 1818, the sheriff sold, and the proceeds were awarded to the second execution. The court say, according to the decisions of that court, which have followed the *English* decisions, the first execution is to be considered as dormant, and constructively fraudulent. The evidence warrants the inference, that the first execution was not issued to collect the debt, but partly, at least, to cover the defendant's property for his use. And they add, the sheriff has no discretionary power in this respect; the law determines the preference. This last, taken in its full extent, I deny.

As to the law and practice in *England*, in respect to expedition in cases of levy, I suspect it is not precisely what some suppose. It is so different from our practice, that I do not know what it is. The sheriff makes a bill of sale to the plaintiff, say all the books. What course is then pursued I know not, and I care not. The law once was, that if the sheriff had executed his writ before the return day, he was safe, and it is so yet in this country. If, after levy, the property is lost or wasted, he is liable; if found at the day of sale, he is not liable. As to what length of time may elapse after a levy, and before a sale, I know of no fixed rule. If, from the declarations of the plaintiff, it is apparent the levy is made not to collect the money, but to protect the goods of the defendant from other creditors, it is, as to those others, fraudulent. This may be inferred from circumstances, or in some cases, from great length of time; and where fraud is found, the levy loses its preference. The circumstances of the case, the prospect of a sale if attempted, or of payment without a sale; circumstances of distress in a defendant's family, (for humanity is not contrary to law in this state,) may all be considered. It has never been held, that the plaintiff saying, he did not wish the defendant distressed; or, that the defendant was honest, and would not secrete his goods, and that the sheriff might levy on them, and safely leave them in the defendant's custody; nor saying to the sheriff, you must have my money at the return day of the writ, but I do not object to any indulgence you can give the defendant in the mean time; or saying, levy and get my money, but you need not move the horses and wagon, or sell them, till the man has hauled in his crop, which is ready, or nearly ready;

(Howell *v.* Alkyn.)

or saying, levy on all, but do not sell till his wife is recovered from her illness, is fraud, or ought alone to be considered as evidence of fraud.

, Judgment affirmed.