[PHILADELPHIA, FEBRUARY 17, 1834.]

## HICKMAN *against* CALDWELL.

## BLACK *against* The Same.

### APPEAL.

If a *fieri facias* be issued, and returned "Levied as per inventory," &c. with an inventory annexed thereto, and immediately after its return an *alias fieri facias* be issued on the same judgment, and put into the sheriff's hands, with instructions from the plaintiff's attorney to stay proceedings for the present, the object being merely to secure the debt due to his client, it must be postponed to a *fieri facias* subsequently issued by another creditor, which has been duly acted upon.

THIS was an appeal from the decision of the Court of Common Pleas of *Delaware* County, in the distribution of the proceeds of real estate sold by the sheriff under execution.

From the record it appeared, that on the thirtieth of *December,* 1830, a judgment was confessed in the court of Common Pleas of *Delaware* county, by *John Caldwell,* in favour of *Ann Black,* on a bond of the same date, conditioned for the payment of six hundred dollars on the same day. On the following day a *fieri facias* issued on this judgment, which was placed in the hands of the sheriff, with instructions, which, with the manner of making the levy, and taking the inventory, will appear hereafter. This *fieri facias* was returned to *January* term, 1831, (on the 17th of *January*) "levied as per inventory," &c., and an inventory was attached to the writ. On the twenty-first of *January,* 1831, *Ann Black* issued an *alias fieri facias* on her judgment, and placed it in the hands of the sheriff, with instructions, which will also appear hereafter.

On the fifth of *February,* 1831, *Francis Hickman* obtained judgment against *John Caldwell,* issued a *fieri facias,* on which the real debt indorsed was three hundred and thirty-four dollars and fifty cents, with interest from that date, placed it in the hands of the sheriff, and directed a close levy to be made, and the property sold. The sheriff, conceiving from what had taken place, that the proceedings under *Ann Black's* execution had been stayed in such a manner as to give *Hickman's* the preference, proceeded to levy, advertise and sell, on the execution of the latter, on which he returned, "levied the debt and damages within specified, &c. and that he has the moneys," &c.

To the *alias fieri facias* of *Ann Black,* he returned, "levied the sum of five hundred and fifty-nine dollars and twelve cents, part of which is subject to the payment of *Hickman's* execution, and leaving only two hundred and one dollars and eighty-seven cents, to be applied to the payment of costs, and part of the debt on Mrs. *Black's* execution."

After some delay, the money was paid into court for distribution by the sureties of the sheriff, he having become insolvent.

(Hickman *v.* Caldwell.—Black *v.* The Same.)

On the twenty-ninth of *February,* 1832, a rule was obtained on behalf of *Hickman,* to show cause why he should not take out of court the amount for which his execution issued ; and on the twenty-eighth of *May,* 1832, a similar rule was obtained on behalf of Mrs. *Black,* the object of which was to enable her to take out, under her execution, all the money which had been paid in.

It was agreed by the counsel, that the notes of the evidence taken in the Court of Common Pleas by Judge Darlington, should be received on the appeal.   The material parts of the evidence only need be stated.

*John Broomshall,* esquire, the late sheriff, testified, that the first inventory he received, was obtained through *Caldwell,* who came down to his house, and gave him a correct account of the property. He told the sheriff it was not worth while to go on to the property, he was going to break, was insolvent, and would have to be sold out. *William Martin,* esquire, (the attorney of Mrs. *Black*), took the account of the property, and gave him the schedule.   The sheriff had his instructions from *Caldwell,* who observed, that he was insolvent. Mr. *Martin* told the sheriff to hold on to that writ ; it was not their disposition to sell *Caldwell* out, it was only to make Mrs. *Black* safe. Some time subsequent to this, another *fieri facias* was put into the sheriff's hands at the suit of *Hickman,* with orders to go on and sell ; to make a close levy ; to pay no attention to the former levy ; to make a new and a strict one.   Under the last-mentioned writ, he sold and made a return.   The sheriff stated, that he should not have sold on that execution, if Mr. *Martin* had not directed him to stay the proceedings on *Ann Black's* execution.   An *alias fieri facias* on Mrs. *Black's* judgment was put into his hands in court by Mr. *Martin,* who requested him not to return the first execution until he had delivered him that.   He said he had no disposition to sell *Caldwell* out ; he only wanted to hang on to the property to make themselves secure.   The goods were left with the defendant, before *Hickman's* execution came out.   The sheriff was not on the premises at all, until *Hickman's* execution was sued out ; his deputy was there when the levy was made under that execution.   There was no previous levy.

On his cross-examination the sheriff stated, that he did not recollect whether *Caldwell* was present when the inventory was attached to the *fieri facias.*   He recollected *Caldwell's* telling him that he was going to break, and had employed Mr. *Martin* as his attorney.   Mr. *Martin* was not then present.

The witness further stated, that *Caldwell* brought him the list, but being aware that there might be a difficulty, he sent his deputy out to make a close levy, which he did, and it was annexed to the writ, but it was not the one then attached to it.   He made the return on the faith of his deputy.   The *alias fieri facias* he stated, was issued immediately on the return of the original *fieri facias.*   When *Hickman's* execution came into his hands he did not inform the person who

brought it that he had Mrs. *Black's.* He went to Mr. *Martin,* and did not inform him than an execution had been put into his hands at the suit of *Hickman.* He went to Mr. *Martin* to know what he was to do with the *alias fieri facias,* and whether he was to go on and sell or not. Mr. *Martin* told him he wished proceedings stayed. The witness added, that he knew the proceedings were ordered to be stayed. He had the *alias fieri facias* in his hands at the time. After the advertisements were set up, Mr. *Martin* went to the sheriff and asked him, what writ he was selling under. He answered, *Hickman's.* Mr. *Martin* then said, you must go on and sell under Mrs. *Black's.* The sheriff answered, that he would make return of the balance of the money to her.

*Jonathan Vernon,* who was also affirmed on the part of *Hickman,* stated, that the sheriff and Mr. *Martin* were talking in *Irvin's* bar-room, and the sheriff called on the witness to take notice of what he said. He then asked Mr. *Martin* whether he should go on with the sale of *John Caldwell's* property or not? *Martin* said—'No; stay proceedings.'

*Samuel R. Lampleugh* testified, that he was the deputy sheriff, and went to levy on the property at the suit of *Hickman.* He never went to make a levy on it at the suit of Mrs. *Black.* He never went on that business more than once.

It was proved or admitted that *John Caldwell* and Mrs. *Black* were half brother and sister, and lived together.

On the part of Mrs. *Black, William Martin,* esquire, was affirmed, and stated that he was the attorney of Mrs. *Black,* in relation to the *alias fieri facias :* That in the conversation which took place at *Irvin's* the sheriff called upon him to know whether he should go on immediately with the execution at the suit of *Ann Black* against *John Caldwell,* and whether he should immediately advertise and sell : That he told him " it was not the wish of the plaintiff to sell the property of the defendant at that present time : That it was the dead of winter, and property would sell better at another period: That he would give him instructions when he wanted him to sell: That Mrs. *Black* did not want to press her brother if she was secure in her debt :" That the sheriff then called Mr. *Vernon,* and mentioned to him, that he wanted him to take notice, that he (the witness) had ordered the proceedings stayed: That he remarked to the sheriff at that time, or immediately after, that Mrs. *Black* wanted the proceedings stayed for the present moment or time, so far as regarded advertising, and proceeding to sale : That he called, as he thought, the next day, on the sheriff, who was sick in his chamber, and told him he had learned that another execution had been issued and he supposed he would go on with the sale whether they were disposed or not : That in *Irvin's* bar-room the sheriff did not inform him that another execution had been issued, nor did he know it until the next day : That when the first *fieri facias* was issued, the sheriff and *Caldwell* came to him in the prothonotary's office, and at the request of the sheriff he made the

inventory attached to the writ, *Caldwell* mentioning the articles: That he also drew up the return to the *fieri facias*, at the request of the sheriff, as he had done in many other instances: That the return was made on the last day on which the writ was returnable: That according to his recollection, the *alias fieri facias* did not issue until a day or two after the return day of the first writ, and he did not recollect having given the *alias fieri facias* to the sheriff himself, nor having given him any particular instructions with regard to it until the conversation at *Irvin's*, though he might have done so: That he mentioned to the sheriff on several occasions, that it was not the disposition of Mrs. *Black* to distress her brother, if she could avoid it, but she wanted to and would save herself if possible: That he believed the general direction was given on the first execution that he would give the sheriff notice when they wished a sale: That he thought Mrs. *Black* and Mr. *Caldwell* both applied to him to take out the execution, but was not positive with regard to that, nor whether they were both present when the judgment was signed: That *Caldwell* mentioned that he owed his sister so much money, six hundred dollars, and he wished the witness to secure it for her: That he (the witness) said, if *Caldwell* would confess a judgment, he could issue an execution and sell the property; no other plan, he thought, was proposed; nothing was said, he believed, about a bill of sale, but of this he was not certain; the sister said she did not wish to sell her brother's property immediately, if she could be secured without it: That he thought there was no agreement, but the matter was left altogether to his discretion to press the sale or let the execution stand, as he saw proper: That he prepared the bond on which the judgment was entered, and his impression was, that Mrs. *Black* was present: That he supposed the conversation with the sheriff was on the fifth of *February*, 1831, the day *Hickman's* execution was issued, and that the sheriff had just received it.

Upon the evidence above stated, the Court of Common Pleas, after argument, decided that *Ann Black* was entitled to all the money in court, and *Francis Hickman* appealed from the decision.

The exceptions filed in this court, were—

1. That the facts of the case prove, that the executions of *Ann Black* were intended merely as a cover to the property of the defendant.

2. That the facts and returns show, that the execution of *Francis Hickman* was entitled to a legal preference, and it was postponed by the Court of Common Pleas to the execution of *Ann Black*.

*Dick* and *Dillingham*, for the appellant, cited *Starkie on Ev.* part 4, page 1350.   *Hob.* 206.   *Shewell* v. *Fell*, 3 *Yeates*, 17.   S. C. 4 *Yeates*, 47.   *Smallcomb* v. *Buckingham*, 1 *Salk.* 320.   S. C. 1 *Ld. Raym.* 251. *Act of* 16*th April*, 1827.   *Purd. Dig.* 476.   *Howell* v. *Alkyn*, 2 *Rawle*, 286.   *Mechanics Bank* v. *Fisher*, 1 *Rawle*, 341.   *Cowden* v. *Brady*, 8 *Serg. & Rawle*, 505. 510.   6 *Ba. Ab.* 179.   *Snyder* v. *Kunkleman*, 3 *Penn. Rep.* 487.   *Barnes* v. *Billington*, 1 *Wash. C. C. Reps.* 29.

(Hickman *v.* Caldwell.—Black *v.* The Same.)

*Berry* v. *Smith*, 3 *Wash. C. C. Reps.* 60.   2 *Kent's Com.* 524.   *Bond* v. *Gardener*, 4 *Binn.* 269.

*S. Edwards* and *Tilghman*, for the appellee, relied principally upon *Howell* v. *Alkyn*, 2 *Rawle*, 282.

The opinion of the court was delivered by

GIBSON, C. J.—This case is said to have been ruled below on the authority of *Howell* v. *Alkyn*, 2 *Rawle*, 282; and ruling it by the principles assumed by the judge to whom was assigned, in that case, the duty of pronouncing the judgment of the court, instead of ruling it by the point directly decided, the conclusion drawn by the President of the Common Pleas, could not well have been avoided. I feel bound to say, however, that those were not the principles of the cause as settled in consultation, the circumstance intended to have been made the test, being the same that had been applied in *Eberle* v. *Mayer*, 1 *Rawle*, 366, and that has since been applied in the *Commonwealth* v. *Strembach*, 3 *Rawle*, 341, to wit,—the presence or the absence of a direction to stay proceedings on the levy. There was no such direction in *Howell* v. *Alkyn*; and the mere sufferance of procrastination by the officer, was held not to be fraudulent *per se*. Had the exact bearing and extent of the principles laid down in the opinion delivered, been perceived at the time, the disclaimer would have been made then, which I feel it a duty to the profession and the court to make now. I am happy to have the authority of my brother ROGERS, the other survivor of the judges who then composed the court, for the entire accuracy of this statement, and for saying that the principles laid down by my brother HUSTON were peculiar to him. Then, without intimating an opinion on the point made here, in relation to the supposed effect of the return on the rights of the parties, we will determine this case, as we have determined all others of a similar nature, by an application of the test just mentioned. The principle of this test is, that to levy with directions to proceed no further, can be referred to no object but the creation of a lien which the law does not tolerate. What was the object here? *Ann Black*, who claims priority, put her *fieri facias* into the hands of the sheriff, with instructions that will presently be stated, on the thirty-first of *December*, 1831, which was returned at the *January* term succeeding, 'levied as per inventory.' Immediately after this return was made into office, an *alias fieri facias*, which was not the next process in order, and which is therefore a suspicious circumstance, was issued to the succeeding term. *Hickman* put his execution into the sheriff's hands on the fifth of *February*, with directions to proceed promptly, make a close levy, and sell the property. To this execution the sheriff returned, 'Levied the debt and damages within specified, &c. and that he has the money," &c. To *Black's alias* he returned, " Levied the sum of five hundred and fifty-nine dollars twelve cents; part of which is subject to the payment of

(Hickman *v.* Caldwell.—Black *v.* The Same.)

*Hickman's* execution, and leaving only two hundred and one dollars thirty-seven cents to be applied to the payment of costs and part of the debt on Mrs. *Black's* execution." Thus stands the case on the written evidence of the writs and returns. The parol evidence makes it perfectly clear that there was an actual plan on the part of Mrs. *Black*, her attorney, and the debtor, who was her brother, to use her execution, not only for purposes of present security, but to cover the property for a time from other creditors. The sheriff testifies, that he received his instructions from the debtor himself and the plaintiff's attorney, and that they furnished him with a list of the property, the debtor saying, it was not worth while to go to the house; that he was insolvent, going to break, and must be sold out; and that he would give the sheriff a correct account of the property. The sheriff further testifies that the attorney made the schedule and delivered it to him, desiring him ' to hold on to that writ,' and saying it was not his client's ' disposition to sell *Caldwell* out; it was only to make her safe.' The officer swears he would not have sold on the second execution, if the attorney had not directed him to stay proceedings on the first: That when the *alias* was put into his hands in court, he was requested not to return the preceding execution till the attorney had delivered him that, as his client had no disposition to sell the debtor out, but only to make herself secure: That the debtor said he had made *Martin* his attorney; and that *Martin* had ordered the proceedings to be stayed. There was much more to the same effect; the order to stay being further proved by *Vernon*, a witness present when it was given. *Martin* corroborates the testimony of the sheriff, and says, he told him when the latter called for instructions, that it was not the plaintiff's wish to sell the property ' at that present time; that it was the dead of winter, and the property would sell better at another time, and he would give him instructions as to the time; and that the plaintiff did not want to press her brother if she were secure of the debt, but wanted the proceedings stayed for the present, so far as regarded advertising and proceeding to sale.' He proved, however, that he ordered the sheriff to proceed promptly as soon as he discovered that there was a conflicting execution in his hands; and that both Mrs. *Black* and *Caldwell* applied to him to issue the execution, the latter admitting he owed her six hundred dollars, and the former desiring the attorney to have it secured.

This is the substance of the case, given for the most part in the words of the witnesses; and it shows, not only a stay of execution pursuant to an order of the execution creditor, but a clear preconcerted plan, not only to levy the execution as a security, but to keep the other creditors at bay: so that it is unnecessary to say, that it presents one of the strongest instances of legal fraud that can be imagined. It is ordered, therefore, that the decree of the court below be reversed; and that the money in court be applied in the first place to *Hickman's* execution, leaving the surplus for that of Mrs. *Black*.

                                             Decree reversed.